UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARLENE SANKAR,

Plaintiff,

- against -

THE CITY OF NEW YORK; OFFICER GREG
OSTROWSKI, 103rd PRECINCT; OFFICER PATRICK
AGUGLIARO, 103rd PRECINCT; OFFICERS JOHN
DOE #1- #7, 103rd PRECINCT; RAYMOND KELLY,
COMMISSIONER OF THE NEW YORK CITY
POLICE DEPARTMENT; KARLENE WHITE;
ASSISTANT DISTRICT ATTORNEY HARRIS
LIOLIS, THE OFFICE OF QUEENS COUNTY
DISTRICT ATTORNEY; DISTRICT ATTORNEY
RICHARD BROWN, THE OFFICE OF THE QUEENS
DISTRICT ATTORNEY, SGT. JOSEPH LANGAN,
103rd PRECINCT; OFFICER WARREN SAVAGE,
103rd PRECINCT; OFFICER ERIC ORTEGA, 103rd
PRECINCT; LT. GALLI, 103rd PRECINCT; SGT.
O'BRIEN, 103rd PRECINCT; SGT. IVAN GOMEZ,
103rd PRECINCT,

Defendants.

07 CV 4726 (DLI)(ALC)

**FIRST
AMENDED
COMPLAINT
AND JURY DEMAND**

## COMPLAINT AND JURY DEMAND

MARLENE SANKAR, by her attorneys, The Law Offices of Anthony Colleluori

and Associates, LLC as and for a Complaint against Defendants, CITY OF NEW YORK;

OFFICER GREG OSTROWSKI, 103rd PRECINCT, OFFICER PATRICK AGUGLIARO, 103rd

PRECINCT, OFFICERS JOHN DOE #1- #7, 103rd PRECINCT; RAYMOND KELLY,

COMMISSIONER OF THE NEW YORK CITY POLICE DEPARTMENT; ASSISTANT

DISTRICT ATTORNEY HARRIS LIOLIS, THE OFFICE OF THE QUEENS COUNTY

DISTRICT ATTORNEY; DISTRICT ATTORNEY RICHARD BROWN, THE OFFICE OF

QUEENS COUNTY DISTRICT ATTORNEY; KARLENE WHITE; SGT. JOSEPH LANGAN, 103rd PRECINCT; OFFICER WARREN SAVAGE, 103rd PRECINCT; OFFICER ERIC ORTEGA, 103rd PRECINCT; LT. GALLI, 103rd PRECINCT; SGT. O'BRIEN, 103rd PRECINCT, respectfully sets forth and alleges that:

## INTRODUCTION

1.     This action is brought pursuant to Title 42, USC § 1983, for the purpose of having declared and judged unconstitutional the actions of the Defendants relating to the August 24, 2006 and November 21, 2006 arrests, and related prosecutions, of Marlene Sankar, as well as the December 18, 2006 presentation to the Grand Jury of the case against her, taking place in the Criminal Court of the City of New York, County of Queens.

## JURISDICTION

2.     The jurisdiction of this Court is invoked pursuant to the provisions of: Title 42 USC §1983, providing for the protection of all persons and their civil rights and their address of deprivation of rights under Color of Law; 42 U.S.C. §1985(3), providing for protection from a conspiracy to interfere with a person's civil rights; 28 USC §1331(b), which presents a federal question; 28 USC §1343(a)(3), brought to address the deprivation under color of state law of rights, privileges and immunities secured by the Constitution of Laws of the United States.  The rights herein sought to be redressed are the rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States as hereinafter more fully appears.

3.     Plaintiff's claims for attorneys' fees and costs are predicated upon 42 U.S.C. § 1988 and 42 U.S.C. § 2000, which authorize the award of attorney's fees and costs to prevailing parties pursuant to 42 U.S.C. § 1983 and the RFRA.

4.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331, in that this is a civil suit arising under the Constitution of the United States.

5.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1343(a) in that this action seeks to redress the deprivation, under color of state law, of rights secured to the plaintiff by the First, Eighth and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

6.      Pendant jurisdiction of the Federal District Court is invoked with respect to the Plaintiff's claims under the state common law theories of malicious prosecution, battery, false imprisonment and intentional infliction of emotional distress pursuant to 28 U.S.C. §1367 (as the entire action arises out of the same, nucleus of facts as such, that the plaintiff would ordinarily be expected to try them in one judicial proceeding).

7.      Venue is proper in this United States Federal District pursuant to the provisions of Title 28, USC §1391(b) in that this is a civil action wherein jurisdiction is not founded solely on diversity of citizenship; the Plaintiff resides within this District as well as the fact that the Defendants, upon information and belief, work and reside within the District.

## **PENDENT STATE CLAIMS**

8.      That Notice of the Plaintiff's claims, the nature of the claims and the date of, the time when, the place where and the manner in which the claims arose was duly served upon the City of New York, on or about October 6, 2006 and October 12, 2006.

Plaintiff submitted to a 50-H hearing as requested and conducted by defendants.

That more than thirty days have elapsed since the Notice of Claim has been served upon defendants and the said defendants has neglected or refused to make any adjustment or payment thereof.

That this action was commenced within one year and ninety days after the causes of action arose.

That New York CPLR § 1601 does not apply pursuant to the exception provided by CPLR § 1602(1)(b).

9.     The matter in controversy exceeds, exclusive of interest and costs, the sum or value of ONE HUNDRED FIFTY THOUSAND ($150,000.00) DOLLARS.

## PARTIES:

10.     Marlene Sankar (hereinafter referred to as "Plaintiff") at all times relevant to this complaint resided at 145-07 105th Avenue, Queens, NY 11435.

11.     Upon information and belief, Defendant The City of New York ("hereinafter Defendant City") was and is a municipal corporation organized and existing under and by virtue of the laws of the State of New York, with its central offices located in the County of New York, and diverse other offices and facilities throughout the State of New York.

12.     Upon information and belief, Defendant City is an employer within the definitions contained in 42 U.S.C. §12111(5), employing more than fifteen (15) employees, and is engaged in an industry-effecting commerce.

13.     Upon information and belief, Defendants Raymond Kelly, Police Commissioner of the New York City Department (hereinafter "Defendant Kelly"), Officer Greg Ostrowski (hereinafter "Defendant Ostrowski"), Sgt. Joseph Langan (hereinafter "Defendant Langan"), Officer Warren Savage (hereinafter "Defendant Savage"), Officer Eric Ortega (hereinafter "Defendant Ortega"), Sgt. O'Brien ("Defendant O'Brien"), Officer Patrick Agugliaro (hereinafter "Defendant Agugliaro"), Sgt. Ivan Gomez (hereinafter "Defendant Gomez"); and Lt.

Galli (hereinafter "Defendant Galli") are employees of Defendant City and are each being sued individually and in their official capacities.

14.     Upon information and belief, Defendant Officer John Doe #1, an officer of 103rd Precinct (hereinafter, "Officer Doe #1"), a natural person, was an employee of Defendant City, and is being sued individually and in his official capacities.

15.     Upon information and belief, Defendant Officer John Doe #2, an officer of 103rd Precinct (hereinafter, "Officer Doe #2"), a natural person, was an employee of Defendant City, and is being sued individually and in his official capacity.

16.     Upon information and belief, Defendant Officer John Doe #3, an officer of 103rd Precinct (hereinafter, "Officer Doe #3"), a natural person, was an employee of Defendant City, and is being sued individually and in his official capacity.

17.     Upon information and belief, Defendant Officer John Doe #4, an officer of 103rd Precinct (hereinafter, "Officer Doe #4"), a natural person, was an employee of Defendant City, and is being sued individually and in his official capacity.

18.     Upon information and belief, Defendant Officer John Doe #5, an officer of 103rd Precinct (hereinafter, "Officer Doe #5"), a natural person, was an employee of Defendant City, and is being sued individually and in his official capacity.

19.     Upon information and belief, Defendant Officer John Doe #6, an officer of 103rd Precinct (hereinafter, "Officer Doe #6"), a natural person, was an employee of Defendant City, and is being sued individually and in his official capacity.

20.     Upon information and belief, Defendant Officer John Doe #7, an officer of 103rd Precinct (hereinafter, "Officer Doe #7"), a natural person, was an employee of Defendant City, and is being sued individually and in his official capacity.

21.     Upon information and belief, Defendants Assistant District Attorney Harris Liolis, Office of the Queens District Attorney (hereinafter "Defendant Liolis"), and District Attorney Richard Brown (hereinafter "Defendant Brown"), Office of the Queens District Attorney, are employees of Defendant City and are each being sued individually and in their official capacities.

22.     Defendant Karlene White, (hereinafter "Defendant White"), at all times relevant to this complaint, resided in the ground floor apartment of 145-07 105th Avenue, Queens, NY 11435.

### FACTS

23.     Plaintiff owns a two-family home where she resides in an apartment on the second floor; Plaintiff leases the first floor apartment to tenants as a residence.

24.     Plaintiff's husband interviewed Defendant White to determine her eligibility as a tenant for the apartment of Plaintiff and her husband.  Plaintiff met Defendant White briefly at this interview. Defendant White advised Plaintiff that she works at UPS and that Plaintiff might be able secure job there, too.

25.     Defendant White entered into a one-year lease with Plaintiff's husband to rent the first story apartment of Plaintiff's two-family house in December, 2005.  Her rent was $1200 a month.  Initially, Public Assistance made monthly payments of $850 to Plaintiff to reduce Defendant White's rent payments by that same amount; two months later, Public Assistance reduced this subsidy to $750 monthly.

26.     Plaintiff never met Defendant White prior to her interview with Plaintiff's husband.

27.     On or about February 2, 2006, Plaintiff began working at UPS.  Plaintiff and Defendant White both worked in the Data Capture Department.

28.     As of August 24, 2006, Defendant White was transferred from her position in the Data Capture Department to another department because she was involved in a number of disagreements with coworkers and supervisors.  Plaintiff remained in that Department.

29.     In approximately April, 2006, Plaintiff observed individuals unknown to her depositing children at White's apartment; around this time, Plaintiff discovered a flyer advertising White's apartment as a daycare center.  The flyer provided Defendant White's address, and represented the daycare center to be Lee-Ann's Daycare.

30.     The last rent payment Plaintiff received from Defendant White was for April, 2006.

31.     On or about May 2, 2006, Plaintiff's husband mailed a letter to Defendant White demanding that she cease and desist operating a daycare at her apartment.  Before this date, Plaintiff's husband retained a lawyer who also mailed a cease and desist letter to Defendant White.

32.     Upon information and belief, on or about May 3, 2006, Defendant White caused Plaintiff to be locked out of her house.

33.     On or about May 3, 2006, Defendant White was arrested for throwing feces on the steps leading to Plaintiff's apartment and for attacking Plaintiff's husband as he attempted to clean the steps.  Plaintiff's husband suffered scratches to his neck from the attack.  This incident occurred the day after Plaintiff notified Defendant White to cease and desist operating a daycare center in her apartment.

34.     In approximately August, 2007, Plaintiff retained the law firm of Mays and Associates to initiate eviction proceedings against Defendant White.

35.     Upon information and belief, on or about August 21, 2006, Defendant White threatened Plaintiff with bodily harm.

36.     On or about the evening of August 23, 2006 Plaintiff arrived home from work at UPS and prepared dinner for her family.  After eating dinner and cleaning the kitchen, Plaintiff administered a dose of Tylenol PM to herself and went to bed at 9:30 p.m. that evening.

37.     Plaintiff did not awake at any time prior to her being awaken by police on or about August 24, 2006, at about 1:30 a.m.

38.     Upon information and belief, no fire alarm sounded in Plaintiff's house the night of August 23, 2006, or the following morning.

39.     On or about August 24, 2006, at about 1:19 a.m., at least six police officers, including Defendants Ostrowski, Savage, Galli, and Doe #1 - #6, arrived at the home of Plaintiff and placed her under arrest despite her inquiries into the basis for her arrest.

40.     At no time did an officer advise Plaintiff of her rights under <u>Miranda</u>.

41.     At no time did the defendant officers or Defendant Galli canvas the area surrounding the scene of the alleged incident to investigate the false reports made by Defendant White.  Upon information and belief, at no time did they speak with eye-witnesses who were available to be interviewed at the scene of the alleged crime, to wit, the plaintiff's husband, Mr. Sankar and Ms. Ramoutar.

42.     As she was being placed in the police car, an officer advised Plaintiff that she was under arrest because "[Defendant White] was burned."  At this time, no officer informed Plaintiff that Defendant White was the complaining witness.

43.     When being placed in the police car, Plaintiff observed an ambulance one house from her own, and one or two fire trucks in the area near her house.

44.     Plaintiff was brought to the 103rd precinct by Defendants Ostrowski, Savage, Galli, and Doe #1 - 6, where she was fingerprinted and informed that Defendant White was the complaining witness.  A police officer there then informed Plaintiff that Defendant White had claimed to officers that she went upstairs to Plaintiff's apartment to request that she be provided with hot water and, in response, Plaintiff scalded her with hot water.

45.     Despite her claims of being scalded by Plaintiff, Defendant White, upon information and belief, refused medical treatment upon meeting with the ambulatory medical technicians that responded to her emergency call on August 24, 2006.

46.     Defendant Ostrowski created the accusatory instrument that relates to the August 24, 2006 arrest of Plaintiff.

47.     Defendants Langan and O'Brien approved and encouraged the filing of the complaint report relating to the August 24, 2006 false arrest and investigation of the plaintiff, as conducted by Defendants Ostrowski, Savage, Galli, and Doe #1-6.

48.     August 24, 2006, after leaving the 103rd precinct, Plaintiff was transferred to Queens County Central Booking.  She arrived sometime between 2:00 a.m. and 3:00 a.m., and was arraigned at 8:30 p.m. that night.

49.     Because she was arraigned at a time shortly before the bail posting office closed on the evening August 24, 2006, Plaintiff's husband was unable to post bail for Plaintiff.  As a consequence, Plaintiff was transferred to Rikers Island.  She arrived at or about 2:00 a.m., August 25, 2006, and was released at or about 5:00 p.m.

50.     Later that day, Plaintiff's husband posted bail for her.  She was then removed from Rikers Island and released at the nearest subway station.

51.    August 24, 2006, White was issued a Temporary Order of Protection against Plaintiff.

52.    On or about September 5, 2006, White was arrested for throwing food on the steps leading to Plaintiff's apartment and on Plaintiff's door knobs.

53.    Prior to Defendant White moving into Plaintiff's downstairs apartment, Plaintiff had no contact with the criminal justice system.  During Defendant White's tenancy at Plaintiff's house, police, upon information and belief, visited Plaintiff's house on approximately seventy-five occasions as a result of "false tips" made by Defendant White to police.

54.    December 18, 2006, the matter regarding the August 24, 2006 arrest of Plaintiff was dismissed by the Grand Jury of the County of Queens.  Defendant Ostrowski testified in this proceeding.  His purpose was to persuade the Grand Jury to return a true bill.  His testimony was based in part on documents that he brought for the purpose of having the plaintiff indicted.

55.    ADA Liolis presented the August 14, 2006 matter to the aforementioned Grand Jury.

56.    Upon information and belief, on or about November 21, 2006, two police officers, Defendants Agugliaro and Ortega, visited Plaintiff at her home.  The two officers informed Plaintiff that Defendant White alleged to them that Plaintiff threw garbage into White's apartment.  The two officers left the premises and did not arrest Plaintiff.

57.    Around 6:00 p.m. that same evening, the two officers who had responded to White's complaints earlier that day visited Plaintiff again and asked to see her copy of the Temporary Order of Protection that was issued by the court in favor of Defendant White on August 24, 2006.  Plaintiff complied with their request.

58.     Plaintiff was then arrested and brought to the 103rd Precinct, where she remained until approximately 4:00 a.m., on or about November 22, 2006.  She was then transferred to Central Booking and was released on her own recognizance at about 9:00 p.m., on or about November 22, 2006.

59.     Upon information and belief, images from the security cameras installed in Plaintiff's house indicated that Plaintiff committed no act alleged by Defendant White to police.

60.     Upon information and belief, Defendants Agugliaro and Ortega created the accusatory instrument that relates to the arrest of Plaintiff that occurred on or about November 21, 2006.  Defendant Gomez supervised and encouraged the filing of this instrument.

61.     Upon information and belief, it is a department-wide policy of Defendant Kelly and the New York City Police Department to indiscriminately arrest any individual alleged to have committed an assault, act of harassment or act in criminal contempt of a court order.

62.     On or about December 4, 2006, attorneys for Plaintiff, the Law Office of Anthony Colleluori and Associates, sent correspondence to notify Defendant ADA of Defendant White's abuse of the Temporary Order of Protection that was issued on her behalf on August 24, 2006.  This correspondence sought consent from the ADA to advance Plaintiff's next court appearance that related to the November arrest of Plaintiff in an effort to quell these abuses.

63.     On December 18, 2006, the matter relating to the November arrest of Plaintiff was adjourned in the interests of justice pursuant to CPL § 170.55, an ACOD (Adjournment in Contemplation of Dismissal).  Thereafter, the matter relating to this arrest was dismissed.  The Judge presiding over this proceeding advised the parties that an ACOD would be appropriate in light of the Grand Jury's dismissal of the case against Plaintiff relating to her August arrest, also occurring December 18, 2006.

64.     Prior to the arrest of Plaintiff on or about November 21, 2006, Defendant White was arrested for throwing food and cooking oil on the steps leading to the apartment of Plaintiff.

65.     Upon information and belief, in approximately December 2006, Police responded to another call made by Defendant White at Plaintiff's house.  Plaintiff was not arrested.  This was the third occasion Police responded to a call made by Defendant White at Plaintiff's house.

66.     Upon information and belief, in approximately December 2006, Defendant White called police again, alleging that Plaintiff provided no heat to her apartment.  This was the fourth occasion Defendant White attempted to cause an arrest of Plaintiff.  Police Officer Keifer responded and went to the basement to inspect whether the heat had been turned off there.  Officer Keifer observed that the heat was on, and, upon inspecting Defendant White's apartment, observed that her heat was turned off from within the apartment.

67.     Defendant White was then notified that she was to be evicted from Plaintiff's apartment and was to vacate same February 5, 2007.  Defendant White voluntarily vacated the apartment on or about January 30, 2007.

68.     As a result of Defendant White's false tips, Plaintiff spent nearly three days (sixty-seven hours) in police custody.

69.     To date, Plaintiff suffers from a constant fear of sirens and police.

70.     Plaintiff hired private attorneys to defend her from the criminal proceedings initiated by Defendant White's false complaints to the police.

71.     During White's tenancy, Plaintiff was compelled to install security cameras to protect her from the actions of Defendant White and the police.

72.     Plaintiff has to pay bail bonds fees to be released from jail.

73.     Plaintiff was absent a considerable number of days from work as a consequence of her arrests and court appearances.

## COUNT I

## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS,

## CIVIL RIGHTS ACT OF 1871, 42 USC §1985(3)

74.     Plaintiff realleges Paragraphs 1 through 73 and incorporates them by reference as Paragraphs 1 through 73 of Count I of this Complaint.

75.     That by the aforesaid discriminatory acts and omissions of Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, Doe #1 - #7 and Liolis, in their individual and official capacity as officers/employees of Defendant City, conspired, planned, agreed, and intended to act together with Defendant White in a manner to thereby cause economic and psychological injury to the Plaintiff.

76.     The purpose of Defendants in so acting is to prevent Plaintiff from obtaining the benefits to which she is entitled to under the law and from seeking equal protection of the laws, and from enjoying the equal protection, privileges and immunities of citizens under the Constitution and Laws of the United States and the State of New York including but not limited to enjoy her right to freedoms of speech, movement, association and assembly, to petition her government for redress of her grievances, to be secure in her person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from slavery and deprivation of life, liberty and property without due process of law.

77.     Pursuant to this conspiracy, Defendant White and Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, Doe #1 - #7 and Liolis acted to deprive

Plaintiff of her civil rights by virtue of her illegal arrest, confinement, and subsequent prosecution, in violation of 42 USC §1985(3).

78.    Motivated by invidious animus toward the class of individuals who are subject to temporary orders of protections, all Defendants conspired, planned, agreed and intended to act in a manner to thereby cause economic and psychological injury to Plaintiff when they effectuated the arrest and prosecution of Plaintiff.  Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, Doe #1 - #7 and Liolis willfully arrested and sought the prosecution Plaintiff without probable cause.

79.    Motivated by invidious animus toward members of the South Asian community, all Defendants conspired, planned, agreed and intended to act in a manner to thereby cause economic and psychological injury to Plaintiff though the arrest, battery, prosecution and continued harassment of Plaintiff.

80.    The conspiracy was first manifested when Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, and Doe #1 - #7 arrested Plaintiff after meeting with Defendant White and incorporating her patently incredible allegations to serve as the basis for arresting Plaintiff.  Defendant Officer Ostrowski's signature on the accusatory instrument that was used to prosecute Plaintiff further indicates his participation in this conspiracy.

81.    Defendant Liolis participated in the subject conspiracy through his continued participation in the prosecution of Plaintiff, as well as his failure to investigate whether a crime was committed by her.  Despite his awareness that Defendant White's allegations were patently incredible and his being notified of her unlawful use of the Temporary Order of Protection to effectuate false arrests of Plaintiff, Defendant zealously sought to indict Plaintiff on charges

14

relating to the August 24, 2006 arrest.  He conspired with Defendant White to injure Plaintiff when he consulted with Defendant White to prepare for the indictment of Plaintiff.

82.     Defendants Agugliaro and Ortega conspired with Defendant White when they met with her and used her patently incredible allegations to serve as the basis for effectuating the November 21, 2006 arrest of Plaintiff.  Defendant Officer Agugliaro's signature on the accusatory instrument relating to this arrest is also among the indicia establishing his participation in this conspiracy.

83.     Defendant White's practice of providing the police department and the Office of the District Attorney with false statements that were sworn under the pains and penalty of perjury alleging that Plaintiff had committed crimes onto her, as well her as frequent calls to police to effectuate subsequent arrests of Plaintiff, further establishes her role in the subject conspiracy.

84.     As a result of the aforesaid acts, depriving Plaintiff of her civil rights, Plaintiff suffered mental anguish, emotional distress, physical illness and monetary damages.

## COUNT II

## VIOLATIONS OF 42 U.S.C.:

## 1983 REFUSING OR NEGLECTING TO PREVENT;

85.     Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 84 above with the same force and effect as if herein set forth.

86.     At all times relevant to this complaint, Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, and Doe #1 - #7 were acting under the direction and control of Defendants City and Kelly.

87.     At all times relevant to this complaint, Defendant Liolis was acting under the direction and control of Defendants City and Brown.

88.     Acting under color of law and pursuant to official policy or custom, Defendants City, Kelly and Brown knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendants police officers and ADA, respectively, in their duties to refrain from:

a.     unlawfully and maliciously harassing a citizen who was acting in accordance with her constitutional and statutory rights, privileges, and immunities;

b.     unlawfully and maliciously arresting, imprisoning and prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities;

c.     conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the constitution and laws of the United States of America and the common law of the State of New York,

d.     Otherwise depriving Plaintiff of her constitutional and statutory rights, privileges and immunities.

89.     Defendants City, Kelly and Brown had knowledge, or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed.  Defendants City, Kelly and Brown had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

90.     Defendants City, Kelly and Brown directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant officers and ADA heretofore described.

91.     As a direct and proximate cause of the negligent and intentional acts of Defendants City, Kelly and Brown, Plaintiff suffered physical illness, loss of income, and severe mental anguish in connection with the deprivation of her constitutional and statutory rights guaranteed by the First, Fifth, Eighth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

### COUNT III: VIOLATION OF 42 U.S.C. 1983:

### DETENTION AND CONFINEMENT

92.     Plaintiff repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 91 above with the same force and effect as if herein set forth.

93.     As a resulted of their concerted unlawful and malicious detention and confinement of Plaintiff, the Defendants herein deprived her of both her right to liberty without due process of law and her right to equal protection of the laws, and the due course of justice was impeded, in violation of the First, Fifth, Eighth and Fourteenth Amendments of the Constitution of the United States.

### COUNT IV

### VIOLATION OF DUE PROCESS

94.     The Plaintiff repeats and realleges Paragraphs 1 through 93 and incorporates them by reference as Paragraph 1 through 93 of Count IV of this Complaint.

95.     The Defendants have acted in an unconstitutional manner, thereby violating the Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, which states that no state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law nor deny to any person within its jurisdiction the equal protection of the laws.

96.     In the case at bar, the actions of the Defendants resulted in the Plaintiff being deprived of her freedom of movement as she was confined to the 103rd Police Precinct, Queens County Central Booking, Rikers Island and later to court, until such time as she was released on bail.  Additionally, the actions of the state caused Plaintiff to expend large sums of money for both court appearances, attorneys, and various legal documentation all in an effort to clear her name.

97.     Further, Defendants here violated Plaintiff's right to be free from illegal searches and seizures, as Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, and Doe #1 - #7 effectuated arrests of Plaintiff without probable cause and had no reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense was committed by Plaintiff.  The defendants herein have also violated Plaintiff's right to freedom of speech, movement, association and assembly, to petition her government of redress of his grievances, to be secure in her person, to be free from unreasonable searches and seizures, to enjoy privacy, and deprivation of life, liberty and property without due process of law.

98.     As a result of the aforesaid acts, depriving Plaintiff of her civil rights, Plaintiff suffered physical and mental anguish, emotional distress and other monetary damages, in addition to the deprivation of her civil rights.

## COUNT V

## MALICIOUS PROSECUTION UNDER NEW YORK STATE COMMON LAW:

99.     Plaintiff repeats and realleges and incorporates by reference the allegations contained in paragraphs 1 through 98 above with the same force and effect as if herein set forth.

100.    Defendants instituted and continued a criminal process against Plaintiff with malice:

a.      Defendants White, Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, Doe #1 - #7 and Liolis played an active part in the initiation and continuation of the criminal proceedings against Plaintiff; Defendants Ostrowski, Agugliaro, Galli, OBrien, Gomez, Langan signed criminal complaints and other filings used against Plaintiff;

b.      Plaintiff had neither assaulted nor harassed Defendant White on or about August 23, 2006;

c.      As a result of a false "tip" provided by Defendant White to Police, Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, and Doe #1 - #7 contributed to the filing of Information sheets charging Plaintiff with the crimes of assault, harassment, and criminal contempt.

d.      Upon information and belief, Defendant ADA was provided with information indicating that it was the habit and practice of Defendant White to falsely allege to police that

Plaintiff had committed criminal acts and purposefully failed to investigate same; instead, Defendant ADA proceeded to prosecute Plaintiff and failed to "do justice."

101.    The charges were not based on probable cause; that is, the state of the facts in the mind of the prosecutor would not lead a man of ordinary caution and prudence to believe or entertain an honest or strong suspicion that Plaintiff was guilty.

102.    Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, Doe #1 - #7 and Liolis had a duty to ascertain whether there was reasonable and probable cause for a prosecution, to wit, knowing that the Plaintiff did not harass or assault Defendant White, and that Defendant White's allegations against Plaintiff were patently incredible.

103.    Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, Doe #1 - #7 and Liolis breached their duties.

104.    Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, Doe #1 - #7 and Liolis had a duty to ascertain and report the truth of the information that was supplied.  They knowing, willfully and wantonly failed to perform that duty.

105.    Defendant Liolis had a duty to investigate crimes alleged to be committed by Plaintiff but failed to perform that duty.

106.    Defendant White knowingly made a false statement to Defendants Ostrowski, Savage, Galli, O'Brien, Langan, and Doe #1 - #7 accusing Plaintiff of scalding her with boiling water and this allegation resulted in Plaintiff being charged with a crime.

107.    Defendant White knowingly made a false statement to Defendants Agugliaro, Ortega, Gomez, and Doe #1 - #7, accusing Plaintiff of throwing garbage on her and violating an order of protection (that was procured by false statements).

108.   The criminal proceedings terminated in favor of Plaintiff when a Grand Jury dismissed the charge of Assault that was pending against her.

109.   Defendants City, Kelly and Brown are liable under the doctrine of respondeat superior.

## COUNT VI

## BATTERY UNDER NEW YORK STATE COMMON LAW:

110.   Plaintiff repeats and realleges paragraphs 1 through 109 and incorporates them by reference as paragraphs 1 through 109 of Count VI of this Complaint.

111.   Without the consent of Plaintiff, Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, and Doe #1 - #7 intentionally, harmfully and offensively touched Plaintiff by handcuffing her without probable cause.

112.   Defendants City and Kelly are liable under the doctrine of respondeat superior.

## COUNT VII

## FALSE ARREST UNDER NEW YORK STATE COMMON LAW:

113.   Plaintiff repeats and realleges paragraphs 1 through 112 and incorporates them by reference as paragraphs 1 through 112 of Count VII of this Complaint.

114.   Without the consent of Plaintiff, Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, and Doe #1 - #7 intentionally confined her.

115.   Plaintiff was conscious of her confinement.

116.   The confinement was not otherwise privileged.

117.   Defendants City and Kelly are liable under the doctrine of respondeat superior.

## COUNT VIII

## INTENTIONAL INFLICTION OF EMOTIONAL

## DISTRESS UNDER NEW YORK STATE COMMON LAW:

118.    Plaintiff realleges Paragraphs 1 through 118 and incorporates them by reference as Paragraphs 1 through 118 with the same force and effect as if set forth herein.

119.    Defendants White, Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, Doe #1 - #7 and Liolis intentionally inflicted the aforesaid acts of false imprisonment, malicious prosecution, and harassment on Plaintiff, with malice, and without legal, economic, business or social justification or excuse and did so for the sole purpose of causing her emotional distress and anguish.

120.    As a result of the aforesaid intentional acts of the Defendants White, Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, Doe #1 - #7 and Liolis, the Plaintiff has been irreparably damaged.

121.    That because of the willful and malicious acts of the Defendants White, Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, Doe #1 - #7 and Liolis in gross disregard of the civil rights and well being of the Plaintiff, Plaintiff is entitled to punitive and exemplary damages.

122.    Defendants City and Kelly are liable for the actions of Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, and Doe #1 - #7 under the doctrine of respondeat superior.

## JURY TRIAL

Plaintiff demands a trial by jury of all issues in this action that is so triable.

WHEREFORE, Plaintiff respectfully requests that this Court find in her favor and against the Defendants as follows:

1.      Declare the actions of the law enforcement officials, Defendants Kelly, Liolis, Brown, City and White to be in violation of the First, Fifth, Eighth, and Fourteenth Amendment to the Constitution of the United States;

2.      Declare the actions of the law enforcement officials, Defendants Kelly, Liolis, Brown, City and White compensable under the New York State Common Law theories of intentional infliction of emotional distress, false imprisonment and battery.

3.      Award Plaintiff damages for the full value of all compensation laws, as a result of the unlawful conduct of the Defendants Ostrowski, Savage, Agugliaro, Ortega, Galli, O'Brien, Gomez, Langan, Doe #1 - #7 and Liolis, Kelly, Liolis, Brown, City and White.

4.      Award Plaintiff compensatory damages consistent with the aforesaid statutes;

5.      Award Plaintiff punitive damages consistent with the aforesaid statutes;

6.      Award Plaintiff appropriate compensatory and punitive damages on his individual tort;

7.      Award Plaintiff reasonable attorneys' fees consistent with the aforementioned statutes; and

8.      Award Plaintiff such other and further relief as to this court may seem just, equitable and proper.

Dated: July 30, 2009
Woodbury, New York

By:      _____/s/_____
Anthony J. Collleluori, Esq.
(AC 9108)
Attorney for Plaintiff
180 Froehlich Farm Boulevard
Woodbury, NY  11791

(516) 741-3400