UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARLENE SANKAR,

*No.: 07-cv-4726*

Plaintiff,

- against -

THE CITY OF NEW YORK; OFFICER GREG
OSTROWSKI, 103rd PRECINCT; OFFICER
PATRICKAGUGLIARO, 103rd PRECINCT; OFFICERS
JOHNDOE #1- #7, 103rd PRECINCT; RAYMOND
KELLY,COMMISSIONER OF THE NEW YORK
CITYPOLICE DEPARTMENT; KARLENE
WHITE;ASSISTANT DISTRICT ATTORNEY
HARRISLIOLIS, THE OFFICE OF QUEENS
COUNTYDISTRICT ATTORNEY; DISTRICT
ATTORNEYRICHARD BROWN, THE OFFICE OF THE
QUEENSDISTRICT ATTORNEY, SGT. JOSEPH
LANGAN,103rd PRECINCT; OFFICER WARREN
SAVAGE,103rd PRECINCT; OFFICER ERIC ORTEGA,
103rdPRECINCT; LT. GALLI, 103rd PRECINCT;
SGT.O'BRIEN, 103rd PRECINCT; SGT. IVAN
GOMEZ,103rd PRECINCT,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

LAW OFFICES OF
ANTHONY J. COLLELUORI
Attorney for Petitioner
68 South Service Road, Suite 100
Melville, New York 11747
Tel. 516.741.3400
Fax. 631.414.7549

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**                                                       iii
**PRELIMINARY STATEMENT**                                                      1
**STATEMENT OF FACTS**                                                         2
**STANDARD OF REVIEW**                                                         2
**ARGUMENT**
**POINT I**
PLAINTIFF WAS FALSELY ARRESTED ON AUGUST 24, 2006
AND NOVEMBER 21, 2006                                                          3
    A.  THERE WAS NO PROBABLE CAUSE FOR MS. SANKAR'S
       AUGUST 24, 2006 ARREST                                   3
    B.  THERE WAS NO PROBABLE CAUSE FOR MS. SANKAR'S
       NOVEMBER 21, 2006 ARREST                                 5
**POINT II**
THERE IS A VIABLE CLAIM OF MALICIOUS PROSECUTION
AGAINST DEFENDANTS                                                             9
**POINT III**
DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY                              14
**POINT IV**
DISTRICT ATTORNEY RICHARD BROWN IS LIABLE FOR
 SUPERVISORY LIABILITY                                                     18
**POINT V**                                                                    19
**POINT VI**
PLAINTIFF HAS VALID MUNICIPAL LIABILITY CLAIM                                  19
**POINT VII**
PLAINTIFF HAS VALID STATE LAW CLAIMS AGAINST DEFENDANTS
    A.  PLAINTIFF HAS VALID STATE LAW CLAIMS FOR FALSE ARREST
       AND MALICIOUS PROSECUTION                                22

    B.  PLAINTIFF HAS A VALID BATTERY CLAIM                            22
    C.  PLAINTIFF HAS A VALID CLAIM FOR
       INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS             22

**CONCLUSION**                                                                 25

# TABLE OF AUTHORITIES

**CASES**                                                                                  **PAGES**

Aiken v. Nixon,                                                                                24
236 F. Supp. 2d 211, 240 (N.D.N.Y. 2002)

Albright v. Oliver,                                                                          9, 10
510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d
114 (1994)

Am. Cas. Co. of Reading, Pa v. Nordic                                                          3
Leasing, Inc.,
42 F.3d 725 (2d Cir. 1994)

Anderson v. Creighton,                                                                         15
483 U.S. 635, 640, n. 2, 107 S. Ct. 3034, 97 L.
Ed. 2d 523 (1987)

Anderson v. Liberty Lobby, Inc.,                                                               3
477 U.S. 242 (1986)

Bender v. City of New York,                                                                   24
 78 F.3d 787, 790 (2d Cir.1996)

Carbajal v. County of Nassau,                                                                 20
271 F. Supp. 2d 415, 422 (E.D.N.Y. 2003)

Cerrone v. Brown,                                                                             17
246 F.3d 194, 203 (2d Cir. 2001)
Colon v. City of New York,                                                                     9
60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250, 468
N.Y.S.2d 453, 455 (1983)

Conkey v. State,                                                                              14
74 A.D.2d 998, 999, 427 N.Y.S.2d 330, 332
(4th Dep't 1980)

Cornett v. Brown,                                                                             17
04-CV-0754, 2007 U.S. Dist. LEXIS 68668,
2007 WL 2743485 (2007)

Covington v. City of New York,                                                                 3
171 F.3d 117, 122 (2d Cir. 1999)

Coyle v. Coyle,                                                                              3
153 Fed. Appx. 10, 12 (2d Cir. 2005)

DeLeonibus v. Scognamillo,                                                                  23
 583 N.Y.S.2d 285, 286, 183 A.D.2d 697, 698
(2d Dep't 1992)
Finnegan v. Fountain, 915 F.2d 817, 821, 823                                                22
(2d Cir. 1990)

Gonzalez v. City of New York,                                                               19
1999 U.S. Dist. LEXIS 11413 at*1-2
(S.D.N.Y. 1999)

Graham v. Connor,                                                                           22
490 U.S. 386, 397, 104 L. Ed. 2d 443, 109 S.
Ct. 1865 (1989)

Green v. City of New York,                                                                  20
465 F.3d 65, 80-81 (2d Cir. 2006)

Jocks v. Tavernier,                                                                          3
316 F.3d 128, 135 (2d Cir. 2003)

Lyons v. Xenia,                                                                             15
417 F.3d 565, 581 (CA 2005)

Martin v. City of Albany,                                                                   24
42 N.Y.2d 13, 16, 364 N.E.2d 1304, 1307, 396
N.Y.S.2d 612, 614 (1977)

McClellan v. Smith,                                                                         17
 439 F.3d 137, 147 (2d Cir. 2006)

Miloslavsky v. AES Eng'g Soc'y, Inc.,                                                        3
 808 F. Supp. 351 (S.D.N.Y. 1992), aff'd, 993
F.2d 1534 (2d Cir. 1993)

Murphy v. Lynn,                                                                              9
118 F.3d 938, 947 (2d Cir. 1997)

Murphy v. Murphy,                                                                           24
109 A.D.2d 965, 486 N.Y.S.2d 457, 459 (3d
Dep't 1985)

Nardelli v. Stamberg,                                                    13
44 N.Y.2d 500, 502-03, 406 N.Y.S.2d 443,
445, 377 N.E.2d 975, 976 (1978)

Pearson v. Callahan,                                                     15
 129 S. Ct. 808 (2009)

Posr v. Court Officer Shield No. 207,                                    17
180 F.3d 409, 416 (2d Cir. 1999)

Rattner v. Netburn,                                                       3
930 F.2d 204, 209 (2d Cir. 1991)

Rounseville v. Zahl,                                                      9
13 F.3d 625, 628 (2d Cir. 1994)

Russell v. Smith,                                                         9
68 F.3d 33, 36 (2d Cir. 1995)

Saucier v. Katz,                                                         14
533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d
272 (2001)

Williams v. City of New York,                                           14
02-cv-3639, 2003 U.S. Dist. LEXIS 19078
(2003)

Williams v. Smith,                                                       18
 781 F.2d 319, 323 -324 (2d Cir. 1986)

Young v. County of Fulton,                                              20
160 F.3d 899, 903-04 (2d Cir. 1998)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARLENE SANKAR,

                                        No.: 07-cv-4726

                    Plaintiff,

- against -

THE CITY OF NEW YORK; OFFICER GREG
OSTROWSKI, 103rd PRECINCT; OFFICER
PATRICKAGUGLIARO, 103rd PRECINCT; OFFICERS
JOHNDOE #1- #7, 103rd PRECINCT; RAYMOND
KELLY,COMMISSIONER OF THE NEW YORK
CITYPOLICE DEPARTMENT; KARLENE
WHITE;ASSISTANT DISTRICT ATTORNEY
HARRISLIOLIS, THE OFFICE OF QUEENS
COUNTYDISTRICT ATTORNEY; DISTRICT
ATTORNEYRICHARD BROWN, THE OFFICE OF THE
QUEENSDISTRICT ATTORNEY, SGT. JOSEPH
LANGAN,103rd PRECINCT; OFFICER WARREN
SAVAGE,103rd PRECINCT; OFFICER ERIC ORTEGA,
103rdPRECINCT; LT. GALLI, 103rd PRECINCT;
SGT.O'BRIEN, 103rd PRECINCT; SGT. IVAN
GOMEZ,103rd PRECINCT,

                                Defendants.

## PRELIMINARY STATEMENT

This action arises out of false arrests of Ms. Marlene Sankar that took place on August

24, 2006 and November 21, 2006 respectfully, in connection with Ms. Sankar's dispute with

Defendant White over the holdover and illegal use of the apartment rented by Ms. Sankar to

Defendant White. The charges filed against Ms. Sankar as a result of the aforementioned arrests

were dismissed against Ms. Sankar as: unfounded, by the grand jury for August 24, 2006 arrest;

and ACD ( a dismissal pursuant to NY CPL Section 170.55) by the judge for the second arrest

with the People's consent, both on December 18, 2006.

On or about March 1, 2011 Defendants filed this motion for summary judgment in which they argue that there are no genuine issues of material fact; that the arresting officers had a probable cause for Ms. Sankar's arrests (Defs' Memo at 4); that Ms. Sankar cannot show that defendant police officers were involved in malicious prosecution against her (Defs' Memo at 9); that defendants are entitled to qualified immunity; and that Queens District Attorney Richard Brown is entitled to qualified immunity (Defs' Memo at 11, 14); and that Ms. Sankar's cannot establish that there was a municipal policy or custom that caused the depravation of her constitutional rights (Defs' Memo at 19); and that State claims against defendants must be dismissed as well as Federal claims (Defs' Memo at 22).

Here, Plaintiff Sankar, through her attorney's Anthony Colleluori & Associates, PLLC submits the following Memorandum of Law in opposition to Defendants' motion for summary judgment, arguing that there are issues of material facts as to points argued by Defendants.

## STATEMENT OF FACTS

For a complete statement of the facts necessary to decide this motion, the Court is respectfully referred to Plaintiff Rule 56.1 Statement of Facts, and corresponding exhibits.

## STANDARD OF REVIEW

Summary judgment is to be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In opposing the motion, the nonmoving party may not rest on mere arguments that there are contested facts, but must "set forth specific facts showing that there is a genuine issue." Fed. R. Civ. P. 56(e). The facts will be viewed in the light most favorable to the party opposing the motion, and all reasonable inferences shall be drawn on the non-movant's behalf. Am. Cas. Co.

of Reading, Pa v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994). Summary judgment is not appropriate if there are disputes about material facts "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991).

**ARGUMENT**

**POINT I**

**PLAINTIFF WAS FALSELY ARRESTED on August 24, 2006 and November 21, 2006**

The presence of probable cause is a complete defense to an action for false arrest, whether under § 1983 or New York law. Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999). Police officers have probable cause to arrest when they have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003). Probable cause requires the probability, not an actual showing, of criminal activity. Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993). Moreover, probable cause may exist even where the officers have mistaken information, so long as it was reasonable for them to rely on that information. Coyle v. Coyle, 153 Fed. Appx. 10, 12 (2d Cir. 2005).

**a.   There Was No Probable Cause for Ms. Sankar's August 24, 2006 Arrest**

Here, the officers who performed Ms. Sankar's August 24, 2006 arrest did not have reasonably trustworthy information to arrest Ms. Sankar. Moreover, it was unreasonable for the officers to rely on Defendant White's bare allegation against Ms. Sankar.

On or about the evening of August 23, 2006 Plaintiff arrived home from work at UPS and prepared dinner for her family.   After eating dinner and cleaning the kitchen, Plaintiff administered a dose of Tylenol PM to herself and went to bed at 9:30 p.m. that evening. See Pl's 56.1, ¶26. Plaintiff did not awaken at any time prior to her being awaken by police on or about August 24, 2006, at about 1:30 a.m.   Id., ¶27. The police awakened Plaintiff at about 1:30am on August 24, 2006, and immediately placed her in custody for alleged burning Defendant White with hot water. The police did not inform Ms. Sankar as to the reason for the arrest, or question her as to the facts behind the allegations filed against her. Id., ¶9. The police arrested Ms. Sankar despite the fact that she looked visibly asleep, and there were no paramedics at the scene of the accident when the police arrived. Id., ¶7. Even though Defendant Officer Ostorwiski testified at his depositions that he had an independent recollection of an interview with EMS staff, his assertion is in discord with Ms. Sankar's testimony. Ms.Sankar stated that an EMS vehicle was a block away from her house when she taken to the police station in a police car on August 24, 2006. (See Transcript of Deposition of Officer Greg Ostrowski, dated March 23, 2010, 33:6-8, attached herein as Exhibit 1; see also Transcript of 50H hearing, testimony of Ms. Sankar at 36:25, 37:1-8 attached as Exhibit D to Decl. of Noreen Stackhouse; see also First Amended Complaint, ¶ 43 (Defendants' Exhibit A).   Furthermore, in neither Ostrowski's 32b (police report) nor in his notes, does he mention a conversation with any one from EMS. The 32b and memo book would have been filled out on the night of, or shortly after, the arrest when one would assume things would be fresh in the Officer's mind. The Deposition was taken almost four (4) years after the event.

Additionally, the staff of the 103rd police precinct was aware that Ms. Sankar had an ongoing dispute with Defendant White over the lease of the apartment rented to Defendant White by Ms.

Sankar. On or about May 3, 2006, Defendant White was arrested for throwing feces on the steps leading to Plaintiff's apartment and for attacking Plaintiff's husband as he attempted to clean the steps. Plaintiff's husband suffered scratches to his neck from the attack. This incident occurred the day after Plaintiff notified Defendant White to cease and desist operating a daycare center in her apartment. Pl's 56.1,¶24.

As such, the police officers lacked reasonably trustworthy information to arrest Ms. Sankar, and Defendants' motion should be denied.


**b.  <u>There Was No Probable Cause for Ms. Sankar's November 21, 2006 Arrest</u>**

As for Defendant's argument that there was "probable cause for Plaintiff's November 21, 2006 arrest" the Defendant's misapply the law.

In their own papers defendants argue that the arrest of Ms. Sankar on Thanksgiving eve for a violation of an Temporary Order of Protection (commonly referred to as a TOP) was predicated on Defendant White's complaint against plaintiff (establishing) probable cause to arrest plaintiff "in light" of the existing order of protection and the mandate of <u>NY CPL §140.10(4)</u> (Defs' Memo at  8).

<u>NY CLP §140.10(4)</u> states:

4. Notwithstanding any other provisions of this section, a police officer shall  arrest  a person, and shall not attempt to reconcile the parties or mediate, where such officer has reasonable cause to believe that:
  (a) a  felony,  other  than  subdivision  three, four, nine or ten of section 155.30 of the penal law,  has  been  committed  by such person against a member of the same family or household, is a member of the same family or household as defined in subdivision one of section  530.11  of this chapter; or
  (b) a  duly served order of protection or special order of conditions issued pursuant to subparagraph (i) or (ii) of paragraph (o) of subdivision  one  of  section 330.20 of this chapter is in effect, or an

order of which the respondent or defendant has actual knowledge because he or she was present in court when such order was issued, where the order appears to have been issued by a court of competent jurisdiction of this or another state, territorial or tribal jurisdiction; and

  (i) Such order directs that the respondent or defendant stay away from persons on whose behalf the order of protection or special order of conditions has been issued and the respondent or defendant committed an act or acts in violation of such "stay away" provision of such order; or

  (ii) The respondent or defendant commits a family offense as defined in subdivision one of section eight hundred twelve of the family court act or subdivision one of section 530.11 of this chapter in violation of such order of protection or special order of conditions.

  The provisions of this subdivision shall apply only to orders of protection issued pursuant to sections two hundred forty and two hundred fifty-two of the domestic relations law, articles four, five, six and eight of the family court act and section 530.12 of this chapter, special orders of conditions issued pursuant to subparagraph (i) or (ii) of paragraph (o) of subdivision one of section 330.20 of this chapter insofar as they involve a victim or victims of domestic violence as defined by subdivision one of section four hundred fifty-nine-a of the social services law or a designated witness or witnesses to such domestic violence, and to orders of protection issued by courts of competent jurisdiction in another state, territorial or tribal jurisdiction. In determining whether reasonable cause exists to make an arrest for a violation of an order issued by a court of another state, territorial or tribal jurisdiction, the officer shall consider, among other factors, whether the order, if available, appears to be valid on its face or whether a record of the order exists on the statewide registry of orders of protection and warrants established pursuant to section two hundred twenty-one-a of the executive law or the protection order file maintained by the national crime information center; provided, however, that entry of the order of protection or special order of conditions into the statewide registry or the national protection order file shall not be required for enforcement of the order. When a special order of conditions is in effect and a defendant or respondent has been taken into custody pursuant to this paragraph, nothing contained in this paragraph shall restrict or impair a police officer from acting pursuant to section 9.41 of the mental hygiene law; or

  (c) a misdemeanor constituting a family offense, as described in subdivision one of section 530.11 of this chapter and section eight hundred twelve of the family court act, has been committed by such person against such family or household member, unless the victim requests otherwise. The officer shall neither inquire as to whether the victim seeks an arrest of such person nor threaten the arrest of any person for the purpose of discouraging requests for police intervention.

Notwithstanding the foregoing, when an officer has reasonable cause to
believe that more than one family or household member has committed such
a misdemeanor, the officer is not required to arrest each such person.
In such circumstances, the officer shall attempt to identify and arrest
the primary physical aggressor after considering: (i) the comparative
extent of any injuries inflicted by and between the parties; (ii)
whether any such person is threatening or has threatened future harm
against another party or another family or household member; (iii)
whether any such person has a prior history of domestic violence that
the officer can reasonably ascertain; and (iv) whether any such person
acted defensively to protect himself or herself from injury. The officer
shall evaluate each complaint separately to determine who is the primary
physical aggressor and shall not base the decision to arrest or not to
arrest on the willingness of a person to testify or otherwise
participate in a judicial proceeding.
 Nothing contained in this subdivision shall be deemed to (a) require
the arrest of any person when the officer reasonably believes the
person's conduct is justifiable under article thirty-five of title C of
the penal law; or (b) restrict or impair the authority of any
municipality, political subdivision, or the division of state police
from promulgating rules, regulations and policies requiring the arrest
of persons in additional circumstances where domestic violence has
allegedly occurred.
No cause of action for damages shall arise in favor of any person by
reason of any arrest made by a police officer pursuant to this
subdivision, except as provided in sections seventeen and eighteen of
the public officers law and sections fifty-k, fifty-l, fifty-m and
fifty-n of the general municipal law, as appropriate. (Emphasis added)

The Temp Order of Protection, ("TOP") ordered in the case at bar was not issued under

Section 512 of the CPL. It was issued under Section 513 (see Defendants' Exhibit G). Section

512 is a family offense TOP whereas 513 is a non-family offense TOP. While later in CPL

410.10 Section the law permits Municipalities to promulgate other laws to mandate arrests, it

does not grant them protection from actions for damages by reason of an arrest made by a police

officer pursuant to an arrest not predicated on a TOP outside of this section.

Defendants' custom and policy of arresting whenever there is an outstanding Order of

Protection (under any section of the law) despite the facts surrounding the alleged offense puts

too much power in the hands of a holder of such an order. It seems to require the police officer to "check his brain at the door" and not do his job in protecting people in only making arrests based on probable cause.  In reality, the court, by granting summary judgment in a case of a mandatory arrest under CPL §513 would in fact put any creditor, landlord, or even a plaintiff at the hands of his debtor or tortfeasor because all that person would have to do is file a false complaint (as happened here) and obtain an order of protection and then have his pursuer arrested at the TOP holder's whim.  Such a rule could actually damage business and legal systems (such as in Post-Soviet Russia where a major issue for out of country investors and lenders is that they face false arrest if they should come into the country to collect on a bad debt. In those former soviet states such arrest is usually occasioned by the debtor's payoff to a local constable or jurist. Here, it would be condoned and fashioned right through the law should the court rule in Defendants' favor.) While CPL §512 requires arrest on the word of TOP holder, an arrest for a violation of a CPL §513 order requires a finding of probable cause that the "Defendant-respondent" committed an act in violation of the "stay away TOP."

In the case at bar, Defendants went to great lengths to point out that upon Co-defendant White's initial allegation and upon their investigatory interview of the plaintiff, they determined they did not have enough evidence to arrest the plaintiff for even a Penal Law violation.  It was only after Defendant White brought them her copy of the TOP and that they confirmed with Ms. Sankar that she too had a copy of the TOP that they decided they had to arrest Plaintiff. Clearly, in effectuating the arrest, the officers relied on the "must arrest policy" of the NYPD, and did not have the probable cause required to effectuate any other arrest. The reliance on the policy, however, was mistaken in this situation where there was TOP against a landlord granted to tenant. They do not share a household nor is this a family domestic violence case. As such, Ms.

Sankar November 21, 2006 arrest was false and was based on policy and custom of Defendant New York City (via its police department) and as such there is a genuine issue of material fact (the existence of probable cause that a violation of law occured) and Defendants' motion should be denied as to the November arrest of Ms. Sankar.

## POINT II

### THERE IS A VIABLE CLAIM OF MALICIOUS PROSECUTION AGAINST DEFENDANTS

In their Memorandum in support of motion for summary judgment, Defendants argue that Plaintiff failed to state a claim for malicious prosecution against Defendants. (Defs' Memo at 9). Defendants argue that the Plaintiff cannot demonstrate that criminal proceedings against her were initiated by the police officers, that there was probable cause for Plaintiff's arrests, that there was no malice as a motivation for Defendants' actions. Id. Plaintiff respectfully disagrees.

In order to state a claim for malicious prosecution under New York State law, a plaintiff must demonstrate: (1) the initiation and continuation of criminal process against the plaintiff; (2) the lack of probable cause for commencing the proceeding, and; (3) actual malice as the motivation for the defendant's actions; (4) termination of the proceeding in the plaintiff's favor. Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997); Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995); Rounseville v. Zahl, 13 F.3d 625, 628 (2d Cir. 1994); see also Colon v. City of New York, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250, 468 N.Y.S.2d 453, 455 (1983); Martin v. City of Albany, 42 N.Y.2d 13, 16, 364 N.E.2d 1304, 1307, 396 N.Y.S.2d 612, 614 (1977).

However, Section 1983 claims based on malicious prosecution are subject to a much more rigorous analysis as the result of the Supreme Court's decision in Albright v. Oliver, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994). Chief Justice Rehnquist speaking for the court held that pretrial deprivations of liberty are addressed in the Fourth Amendment which protects

against "unreasonable searches and seizures" and the issuance of warrants without probable cause. Id.

Chief Justice Rehnquist's determination that a Section 1983 malicious prosecution claim cannot be maintained as a violation of substantive process due process does not conclude the analysis. In his concurring opinion, which was joined by Justice Thomas, Justice Kennedy reasoned that although the Due Process Clause protects interests other than the freedom from personal restraint, and that some of those interests overlap with the common law of torts, "a state actor's random and unauthorized deprivation of [a due process] interest cannot be challenged under 42 U.S.C. § 1983 so long as the State  provides an adequate post-deprivation remedy." Id. at 283, 114 S. Ct. at 818 (Kennedy, J. concurring) (citing Parratt v. Taylor, 451 U.S. 527, 535-44, 101 S. Ct. 1908, 1913-17, 68 L. Ed. 2d 420 (1981)). He found that a contrary approach would convert any tort committed by a state official into a Section 1983 claim. Id. Accordingly, in Albright, because Illinois provides a remedy for malicious prosecution, the plaintiff should be unable to invoke a Section 1983 cause of action. 510 U.S. at 285, 114 S. Ct. at 819.

The Second Circuit further developed the principles set forth in Albright in Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995), cert. denied,    U.S., 116 S. Ct. 1676, 134 L. Ed. 2d 779 (1996), and Murphy, 118 F.3d 938.

After the claims of malicious prosecution were dismissed by District Court, the Second Circuit, interpreting Albright, recognized that "the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution; however, Albright, does not bar [plaintiffs] from asserting a federal claim for malicious prosecution under the Fourth Amendment." Id. at 114. "Once a plaintiff presents a claim for malicious prosecution under § 1983, the court must engage in two inquiries: whether the defendant's conduct was tortious; and

whether the plaintiff's injuries were caused by the deprivation of liberty guaranteed by the Fourth Amendment." Id. at 116.

Addressing the second issue first, namely, the constitutional injury, the court recognized that the inquiry begins with the common law of torts because "'in some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular  constitutional right.'" Id. (quoting Carey v. Piphus, 435 U.S. 247, 258, 98 S. Ct. 1042, 1049, 55 L. Ed. 2d 252 (1978)). The validity of the claim however, must be judged against a specific constitutional standard; in the case of a malicious prosecution claim, the Fourth Amendment. Singer, 63 F.3d 110 at 116.

"The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person--i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty." Id. Accordingly, the plaintiff asserting a Section 1983 malicious prosecution claim must demonstrate a deprivation of liberty "consistent with the concept of 'seizure.'" Id.

In a constitutional decision, the Second Circuit in Murphy, supra, expanded the concept of a deprivation of liberty that would satisfy the requirement of a constitutional injury for the purpose of establishing a malicious prosecution claim. In Murphy, the plaintiff, Ernesto Murphy, had been charged with disorderly conduct and resisting arrest, a violation and a misdemeanor, and with two counts of felony assault, arising from a traffic stop initiated by John Lynn, one of the defendants, in Clarkstown, New York. Id. at 938-944. After arraignment on these charges, Murphy was released on his own recognizance, on the condition that he return to court when his appearance was required and that he not leave the State of New York while the criminal charges

were pending. During the following year, Murphy made approximately eight court appearances. Id.

The indictment was subsequently dismissed on speedy trial grounds, due to the prosecutor's failure to bring Murphy to trial within six months. Id. at 943. Murphy then brought a Section 1983 action for false arrest, use of excessive force during the arrest and malicious prosecution, in violation of the First, Fourth, Fifth and Fourteenth Amendments, against Lynn and Weisberg, one of the police officers who had arrived at the scene, as well as the Town of Clarkstown, its police department and its police chief. Id. The district court dismissed all claims as barred by the statute of limitations. Id. Murphy appealed only the dismissal of his Section 1983 claim of malicious prosecution and the Second Circuit reversed and remanded. Id. at 944. Following the remand, a jury trial was held. Id. At the close of evidence, the district court dismissed the claims against the town and its police department and the police chief. A verdict was returned in the plaintiff's favor and against Lynn. Id. The defendants appealed, contending that they were entitled to a judgment as a matter of law. The defendants maintained that (1) the restriction on Murphy's ability to leave the State of New York did not implicate a constitutional right under the Fourth Amendment and (2) a speedy-trial dismissal is not a "favorable termination" of proceedings for the purposes of a claim of malicious prosecution. Id. at 945.

The Second Circuit rejected the defendants' contentions and affirmed the jury award. Id. On the issue of "seizure" under the Fourth Amendment, the Second Circuit noted that liberty deprivations are not limited to physical detentions. It went on to hold that the restriction of out-of-state travel imposed as a condition of release and the obligation to appear in court, constitute "seizures" within the meaning of the Fourth Amendment, stating as follows:

In the present case, one of the conditions imposed upon Murphy's release was that he not leave the State of New York pending resolution of the charges against him, an obvious curtailment of

his otherwise unquestionable constitutional right to travel outside of the state. He was further obligated to appear in court in connection with those charges whenever his attendance was required. He indeed was called for court appearances some eight times during the year in which his criminal proceeding was pending. Under the authorities discussed above, therefore, we reject defendants' contention that the conditions imposed following the initiation of the criminal proceeding against Murphy carried no Fourth Amendment implications. We conclude that the restrictions imposed on Murphy constituted a seizure within the meaning of the Fourth Amendment.

Murphy, 118 F.3d at 946.

In the present case, applying the above standards, the Court should conclude that Ms. Sankar has alleged that she was "seized" within the meaning of the Fourth Amendment.  Ms. Sankar was arrested twice and was required to make court appearances. Consistent with the Second Circuit's decision in Murphy this Court should  conclude that such allegations are sufficient to establish "seizure" under the Fourth Amendment for the purposes of a Section 1983 claim for malicious prosecution.

Furthermore, Defendants do not dispute the fact that it was Defendants Officers Greg Ostrowski and Patrick Agugliaro who authored accusatory instruments against Ms. Sankar, and initiated criminal proceedings against her.  (Defendants' Exhibits F and H).  There is also no question of fact that the both proceedings against Ms. Sankar were terminated in her favor: both cases were dismissed.  (See attached Plaintiff's Exhibit 2). Finally, the issue of non-existence of probable cause is discussed above.

Moreover, under New York law, malice does not have to be actual spite or hatred, but means only "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." Nardelli v. Stamberg, 44 N.Y.2d 500, 502-03, 406 N.Y.S.2d 443, 445, 377 N.E.2d 975, 976 (1978). In most cases, the lack of probable cause -- while not dispositive – "tends to show that the accuser did

not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause." Conkey v. State, 74 A.D.2d 998, 999, 427 N.Y.S.2d 330, 332 (4th Dep't 1980).

The cases cited by Defendants in opposition to the above stated argument are inapt. Defendants mistakenly compare personal involvement of the officers at issue with the first requirement for a claim of malicious prosecution: "the initiation of criminal proceedings against the plaintiff." None of the cases cited by Defendants discusses liability of officers who actually authored a complaint against the (criminal defendant) plaintiff. Moreover, in our case, unlike the cases cited by defendants: Williams v. City of New York, 02-cv-3639, 2003 U.S. Dist. LEXIS 19078, the grand jury did not find probable cause for Ms. Sankar's first arrest and the case against her was dismissed.  Finally, as argued above it is clear that when effecting the second arrest the officers relied on the "must arrest" policy for TOP parties, and not existence of probable cause separate and apart from the existence of a properly served TOP. The motive for the second arrest, as discussed above, was clearly wrong and improper, as even defendants agree it did not rest on probable cause. Therefore, Ms. Sankar's claim for malicious prosecution should not be dismissed by the Court.

## POINT III

## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Defendants further argue that they should be entitled to qualified immunity. Defs' Memo at 11-12.

In Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right.

533 U.S., at 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Ibid. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. See Pearson v. Callahan, 129 S. Ct. 808 (2009).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) (emphasis deleted). The Supreme Court has made it clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved **prior to discovery**." Anderson v. Creighton, 483 U.S. 635, 640, n. 2, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). (emphasis added)

The Supreme court held "[a]lthough we now hold that the Saucier protocol should not be regarded as mandatory in all cases, we continue to recognize that it is often beneficial. For one thing, there are cases in which there would be little if any conservation of judicial resources to be had by beginning and ending with a discussion of the "clearly established" prong. "[I]t often may be difficult to decide whether a right is clearly established without deciding precisely what the constitutional right happens to be." Lyons v. Xenia, 417 F.3d 565, 581 (CA6 2005) (Sutton, J., concurring). In some cases, a discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all. In addition, the *Saucier* Court was certainly correct in noting that the two-step procedure promotes the development of constitutional precedent and is especially

valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable." Pearson, 129 S. Ct. at 818.

Here, Ms. Sankar has established that Defendants violated her clearly established constitutional right under the Fourth Amendment to be free from unreasonable seizures and to not be held and required to suffer time and loss of freedom upon less than probable cause to believe she committed a crime, and as such, Defendants are not entitled to qualified immunity. (see arguments above).

Furthermore, Defendants' conduct, especially regarding Ms. Sankar's second arrest was clearly unreasonable. Defendants effectuated the second arrest of Ms. Sankar based on their "must arrest" policy. They are not immunized from suit however because the TOP issued against plaintiff did not derive from an incident involving domestic violence participants. In addition, Defendants failed to raise this argument until the case went through discovery, and as such, this argument was waived by them. Hence, Defendants' argument that they are entitled to qualified immunity should be rejected by the Court.

Furthermore, the doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). The doctrine of qualified immunity "balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id.

When analyzing qualified immunity in the context of a suit for damages based on an arrest allegedly without probable cause, a police officer is immune from such suit "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 416 (2d Cir. 1999) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)). The Second Circuit has explained this concept of "arguable probable cause" as follows:   "[a]rguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have  indicated that in such cases those officials-like other officials who act  in ways they reasonably believe to be lawful-should not be held personally liable." Cerrone v. Brown, 246 F.3d 194, 203 (2d Cir. 2001) (quotations and citations omitted). As with the probable cause inquiry, the court only evaluates facts known to the arresting officer at the time of the arrest. Cornett v. Brown, 04-CV-0754, 2007 U.S. Dist. LEXIS 68668, 2007 WL 2743485, at *8 (E.D.N.Y. Sept. 17, 2007), aff'd, Cornett v. Jamison, 326 Fed. Appx. 624 (2d Cir. 2009). Ultimately, arguable probable cause exists "if the undisputed facts and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met." McClellan v. Smith, 439 F.3d 137, 147 (2d Cir. 2006) (quoting Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987)).

Taking into consideration the fact that Ms. Sankar was asleep when the policy arrived at her apartment on August 24, 2006; and that there were no EMS at the scene of the accident when they arrived; that Ms. White was arrested before and was known at the 103rd policy precinct for

having argument with Ms. Sankar over the apartment, a jury should determine whether reasonably competent officers could disagree about whether probable cause existed under these circumstances.

Drawing all permissible inferences in favor of the Plaintiff, this case presents too close a question to deprive the Plaintiff of her day in court. As such, Defendants' motion should be denied.

**POINT IV**

**DISTRICT ATTORNEY RICHARD BROWN IS LIABLE FOR SUPERVISORY LIABILITY**

Defendants further argue that Defendant Brown should be afforded an absolute immunity, and/or claims against him should be dismissed as Plaintiff failed to state a claim for supervisory liability.

A prerequisite to § 1983 liability is the personal involvement of the defendant in the alleged constitutional deprivations. The Second Circuit has provided four situations under which a supervisory official is personally involved in a constitutional violation. A supervisor is personally involved when he or she: (1) directly participated in the violation; (2) failed to remedy the wrong after learning of the violation through a report or appeal; (3) created a custom or policy fostering such violations, or allowed such a custom or policy to continue; or (4) was grossly negligent in managing subordinates who caused the violation. Williams v. Smith, 781 F.2d 319, 323 -324 (2d Cir. 1986) (quoting Rizzo v. Goode, 423 U.S. 362, 370-71, 96 S. Ct. 598, 604, 46 L. Ed. 2d 561 (1976))

While District Attorney Brown did not directly participate in the violation of Ms. Sankar's rights, he created and permitted a custom or policy of prosecuting violations of TOPs that were

based on nothing more than the existence of a TOP and any assertion made by the TOP's holder. In other words if Brown's minions were trained to look for probable cause and correct the work of the NYPD when an arrest appears to be based on nothing more than the statement coming from an individual that Brown's office had prosecuted, and whose behavior had been nothing less than bizarre previous to this arrest, Ms. Sankar would not have spent the better part of Thanksgiving in jail. She would not have had to make so many appearances in court nor would she have ever needed to hire an attorney. As such, Defendants' motion should be denied.

## POINT V

Plaintiff concedes that the Queens County District Attorney's Office is not amenable to suit under the New York Law. (The capacity of an entity such as the District Attorney's Office (DAO) to sue or be sued is determined by applicable state law under Fed. R. Civ. P. 17 (b). Under New York law, the DAO does not have a legal existence separate from the District Attorney himself. Accordingly, the DAO is not an entity capable of being sued. Gonzalez v. City of New York, 1999 U.S. Dist. LEXIS 11413 at*1-2 (S.D.N.Y. 1999).

## POINT VI

### PLAINTIFF HAS VALID MUNICIPAL LIABILITY CLAIM

Defendants further argue that Plaintiff's municipal liability claim against the City of New York should be dismissed because plaintiff failed to prove existence of the relevant policy of custom and that this policy or custom caused her specific constitutional deprivation. Defs' Memo at 19.

Deliberate indifference can be proven with evidence that the municipality was given notice of the possibility that its employees were violating citizens' constitutional rights, and failed to make any meaningful investigation into the charges or failed to discipline subordinates

who violated civil rights. Carbajal v. County of Nassau, 271 F. Supp. 2d 415, 422 (E.D.N.Y. 2003) (citing DeCarlo v Fry, 141 F.3d 56, 61 (2d Cir. 1998)).

        The Second Circuit has articulated three requirements that must be met to demonstrate "deliberate indifference" in the context of a failure to train claim. See Green v. City of New York, 465 F.3d 65, 80-81 (2d Cir. 2006) (quoting  Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992)). To support such a claim, a plaintiff must show: (1) that a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the type that training will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights. Young v. County of Fulton, 160 F.3d 899, 903-04 (2d Cir. 1998); Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992).

        Defendants are wrong. First, as argued above and as Defendants conceded in their own Memorandum of Law (pages 7 through 9), while arresting Ms. Sankar second time, Defendants acted upon a "must arrest" policy, citing N.Y. C.P.L. 140.10(4). However, as argued above, section 140.10(4) does not relieve Defendants' obligation to have probable cause to arrest in the underlying violation of the TOP. In CPL §513 TOP case probable cause remains required. In the meantime, it was and still is a policy of the NYPD to arrest anybody against whom there is a complaint of violation of TOP without verifying the applicability of CPL 140.10(4) and/or finding of probable cause that a violation of the TOP occred. As such, Plaintiff has shown the existence of relevant custom or policy.

Further, as argued above, because of the "must arrest' policy, Ms. Sankar suffered violation of her constitutional rights guaranteed by the Fourth Amendment. To wit: she was taken into custody, was forced to spent a night in jail, was forced to make court appearances, and was restrained in her other rights of travel and movement. Significantly, the second arrest and prosecution of Ms. Sankar was dismissed after the grand jury concluded there was no probable cause for Ms. Sankar's accusations in connection with her first arrest.

Defendants' argument that no municipal actor violated Ms. Sankar's constitutional rights contradicts the facts of the case. The arresting and prosecuting police officers, together with the prosecutors are municipal actors who violated Ms. Sankar's rights. The supervisors who failed to train officers as to the lawful applicability of New York laws, and hence the city itself are all responsible for what happened to Ms. Sankar as well as to many others who are prosecuted wrongfully in CPL § 513 cases. Defendants themselves conceded the fact that the "must arrest" policy involves all TOPs. Defs' Memo at 8.

Lastly, Defendants argue that Plaintiff fails to establish a deliberate indifference on behalf of the city to hold city liable for Ms. Sankar's constitutional deprivations. Defs' Memo at 21.  As Defendants points out a successful plaintiff has to show "a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." Defs' memo at 21, citing Cole v. New York City Police Dept's, 1998 U.S. Dist. LEXIS 12430, at *13-14 (E.D.N.Y. 1998). This is precisely what Ms. Sankar did in our case. The deficiency in training the police personnel lead to a "must arrest" policy regardless of applicability of CPL section 140.10(4). This practice is what caused Ms. Sankar's deprivation of constitutional rights. There is no question that this policy

exists: Defendants admitted it. Therefore, Defendants' arguments should be rejected by the Court.

## POINT VII

**PLAINTIFF HAS VALID STATE LAW CLAIMS AGAINST DEFENDANTS**

**A.  Plaintiff has valid State Law claims for false arrests and malicious prosecution**

Defendants argue that Plaintiff's State Law claims for false arrest and malicious prosecution should be analyzed the same way as Plaintiff's federal Law claims and must be dismissed. Defs' Memo at 22.  As argued above, Ms. Sankar's false arrest claims and claim of malicious prosecution should survive summary judgment, and as such the Court should exercise its supplemental jurisdiction over corresponding State Law claims.

**B.  Plaintiff has a Valid Battery Claim**

In their Memorandum, Defendants argue that Ms. Sankar's claim for battery should be dismissed. Defs' Memo at 23. To succeed on an excessive force claim, a plaintiff must show that the amount of force used was "objectively unreasonable." Finnegan v. Fountain, 915 F.2d 817, 821, 823 (2d Cir. 1990). In determining whether the force used by a police officer was reasonable, the court must, once again, consider the perspective of the officer at the time of the arrest, taking into account the fact that the officer may have been required to make a split-second decision. Graham v. Connor, 490 U.S. 386, 397, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989). Given the confusion surrounding the events that occurred that night, Plaintiff submit that there is a issue of martial fact as to whether the force applied to Ms. Sankar on the dates of the arrests was objectively unreasonable.

**C.  Plaintiff has a Valid Claim for Intentional Infliction of Emotional Distress**

Defendants further argue that Plaintiff's claim for intentional infliction of emotional Distress must be dismissed as Plaintiff did not provide notice of it in her Notice of Claim. Defs' Memo at 23.   Plaintiff's position is that she provided sufficient notice of her claims.   General Municipal Law § 50-e does not "require that a claimant state a precise cause of action in *haec verba* in a notice of claim. . . . The Legislature did not intend that the claimant have the additional burden of pleading causes of action and legal theories, proper for the pleadings, in the notice of claim . . . . [§ 50-e] was not meant as a sword to cut down honest claims, but merely as a shield to protect municipalities against spurious ones . . . ." DeLeonibus v. Scognamillo, 583 N.Y.S.2d 285, 286, 183 A.D.2d 697, 698 (2d Dep't 1992) (notice of claim alleging city's negligence in causing accident deemed sufficient notice of negligent supervision claim). See also Frazier v. City of New York, 1997 U.S. Dist. LEXIS 5505, No. 96-3345, 1997 WL 214919, at *3 (S.D.N.Y. Apr. 24, 1997); Ismail v. Cohen, 706 F. Supp. 243, 250 (S.D.N.Y. 1989).    In her notice of claim, Plaintiff stated false arrest and malicious prosecution as a basis for her claim. (See Defendants' Exhibit B). The claim of intentional infliction of emotional distress arises out of the same facts as these claims.

Second, Defendants argue that claim of intentional infliction of emotional distress should be dismissed against the City of New York as one prohibited by public policy.   Defs' Memo at 24. Plaintiff concedes that fact, however, Plaintiff does not concede to dismiss the claim against individual Defendants.

Third, Defendants argue that Plaintiff fails to establish all necessary elements for the claim to be viable. Defs' Memo at 24.   Plaintiff disagrees.   In order to assert a valid claim for intentional infliction of emotional distress ("IIED") under New York law, a plaintiff must demonstrate "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress,

(3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir.1996) (citing Howell v. N.Y. Post Co., 81 N.Y.2d 115, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350 (N.Y.1993)). "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." Id. (citation omitted). The conduct alleged must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Martin v. Citibank, N.A., 762 F.2d 212, 220 (2d Cir. 1985) (quoting Fischer v. Maloney, 43 N.Y.2d 553, 373 N.E.2d 1215, 1217, 402 N.Y.S.2d 991 (N.Y. 1978)).   Based upon police officers' alleged conduct, it is possible that Ms. Sankar could establish that their actions were intentional or deliberate and directed at causing harm which would rise to the level of actionable conduct. Aiken v. Nixon, 236 F. Supp. 2d 211, 240 (N.D.N.Y. 2002) (citing Crespi v. Ihrig, 99 A.D.2d 717, 718, 472 N.Y.S.2d 324 (1st Dept.1984),  aff'd, 63 N.Y.2d 716, 469 N.E.2d 526, 480 N.Y.S.2d 205 (1984). As such, Defendants' motion should be denied.

Defendants'  also argue that Ms. Sankar must present medical evidence of her emotional distress. Defs' Memo at 24-25. This   argument is invalid.   New York courts do not require medical evidence in order to establish the third and fourth elements of intentional infliction of emotional distress. See Murphy v. Murphy, 109 A.D.2d 965, 486 N.Y.S.2d 457, 459 (3d Dep't 1985) (the existence of severe emotional distress and proximate cause may be inferred without expert medical evidence where plaintiff provides his/her own evidence of distress). See also 7A NEGLIGENCE IN THE NEW YORK COURTS, §§ 9.01-9.02, 445-468 (Cary Sklaren ed., Matthew Bender 1996). See, e.g., Richard L. v. Armon, 144 A.D.2d 1, 536 N.Y.S.2d 1014, 1016-17 (2d Dep't 1989) (no mention of medical expert requirement for claim of intentional

infliction of emotional distress).   See also Fusco v. Cohen, 1997 U.S. Dist. LEXIS 12325

(N.D.N.Y. 1997). Therefore, Defendants' motion for summary judgment should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff Marlene Sankar respectfully requests that the court

deny Defendants' motion for summary judgment.



Dated:

Melville, New York
April 20, 2011


s/_____
Anthony J. Colleluori(ac-9103)


s/_____
Alena Shautsova(as-9641)
LAW OFFICES OF
ANTHONY J. COLLELUORI
Attorney for Petitioner
68 South Service Road, Suite 100
Melville, New York 11747
Tel. 516.741.3400
Fax. 631.414.7549
Email: catlaw1@yahoo.com
www.colleluorilaw.com

To:
Noreen Stackhouse
Assistant Corporation Counsel
Of the City of New York
100 Church Street, Room 3-220
New York, NY 10007
(212) 788-9736