UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
MARLENE SANKAR,

                    Plaintiff,

          - against –

THE CITY OF NEW YORK; OFFICER GREG
OSTROWSKI, 103rd PRECINCT; OFFICER PATRICK
AGUGLIARO, 103rd PRECINCT; OFFICERS JOHN DOE
#1 - #7, 103rd PRECINCT; RAYMOND KELLY,
COMMMISSIONER OF THE NEW YORK CITY POLICE
DEPARTMENT; KARLENE WHITE; ASSISTANT
DISTRICT ATTORNEY HARRIS LIOLIS, THE OFFICE
OF QUEENS COUNTY DISTRICT ATTORNEY;
DISTRICT ATTORNEY RICHARD BROWN, THE
OFFICE OF THE QUEENS DISTRICT ATTORNEY; SGT.
JOSEPH LANGAN, 103rd PRECINCT; OFFICER WARREN
SAVAGE, 103rd PRECINCT; OFFICER ERIC ORTEGA,
103rd PRECINCT; LT. GALLI, 103rd PRECINCT; SGT.
O'BRIEN, 103rd PRECINCT; SGT. IVAN GOMEZ, 103rd
PRECINCT,

                    Defendants.
------------------------------------------------------------------------ x

**MEMORANDUM & ORDER**

07 CV 4726 (RJD)(SMG)

DEARIE, District Judge.

      This case arises from a turbulent landlord-tenant dispute that resulted in two allegedly false reports to the police against the landlord, and the landlord's arrests in August and November 2006. Karlene White ("White"), a tenant living on the first floor of plaintiff's home, filed false reports with the New York City Police Department ("NYPD") resulting in plaintiff's arrest and prosecution, and the ultimate dismissal of assault, harassment, and contempt of court charges. Plaintiff now brings an assortment of federal and state law claims against White, police officers involved in both arrests, an assistant district attorney assigned to the case, and other related defendants primarily for false arrest and malicious prosecution, in addition to a roster of

other claims.[1] All of the defendants, except for White, move for summary judgment.[2] Defendants' motion is denied in part and granted in part.

This case ultimately boils down to whether, in effectuating an arrest and commencing a prosecution, a police officer may rely solely on the uncorroborated report of an alleged victim with a known potential motivation to lie. Because genuine issues of material fact exist as to the (1) federal and state law claims for false arrest brought against Officer Greg Ostrowski ("Ostrowski") and Lieutenant Galli ("Galli"), the (2) federal and state law claims for malicious prosecution brought against Ostrowski, and the (3) state law claim for battery brought against Ostrowski and Galli, defendants' motion for summary judgment is denied on these claims as to these defendants in their individual capacities. Defendants' motion for summary judgment is also denied as to plaintiff's state law claims for false arrest, malicious prosecution, and battery against the City of New York under a respondeat superior theory of liability. Otherwise, defendants' motion for summary judgment is granted it its entirety.

# I. BACKGROUND

## A. Landlord-Tenant Relationship

At the time of the allegations giving rise to the instant action, plaintiff owned a two-family home in Queens, New York where she resided with her husband and children on the

---

[1] Defendants have alerted the Court to a possible defect in service as to named defendants Commissioner Kelly, Assistant District Attorney Harris Liolis, Office of Queens County District Attorney, Sgt. Joseph Langan, Officer Warran Savage, Lt. Galli, and Sgt. O'Brien. ECF Docket # 40, Defendants' Memorandum in Support of their Motion for Summary Judgment ("Def. Mem.") at 2, n. 1. Defendants understandably have not pressed the issue as grounds for dismissal as "Rule 4 of the Federal Rules is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice . . . and [the defendants] would not . . . be[] prejudiced by allowing the suit to continue." Romandette v. Weetabix Co., 807 F.2d 309, 311 (2d Cir. 1986) (internal quotations omitted). In this case, whether served or not, all of the named city defendants have been represented ably by Corporation Counsel from the beginning of this suit. In any event, summary judgment is granted on the merits as to all the above-named defendants, except for Lt. Galli.

[2] White has not responded in any way to plaintiff's complaint. In their answer, the city defendants filed a cross-claim for indemnification against defendant White. See ECF Docket # 16, Answer to Amended Complaint & Cross-claim at 16-17. Thus regardless of the outcome of the instant motion, plaintiff's claims and defendants' cross-claims against White survive.

second floor while leasing out the first floor apartment. In approximately December 2005, plaintiff and her husband entered into a one-year lease with White. This landlord-tenant relationship was uneventful until approximately April 2006 when plaintiff observed individuals routinely dropping off children at White's apartment and also discovered a flyer in the neighborhood advertising White's apartment as a daycare center. Plaintiff's husband retained a lawyer, who, on May 2, 2006, mailed a cease-and-desist letter to White. White stopped paying rent in April 2006. In August 2006, plaintiff retained a law firm to initiate eviction proceedings against White. White voluntarily vacated the apartment in January 2007.

### B. August 24, 2006 Arrest ("August arrest")

The undisputed facts underlying the August arrest are as follows. At approximately 1:00 a.m. on August 24, 2006, White phoned 911 to report an assault in progress. Ostrowski and Galli (collectively the "August arresting officers") among other officers named and unnamed responded to the call.[3] Upon arrival, Ostrowski interviewed White. White informed Ostrowski that plaintiff was her landlord and that White and plaintiff had been engaged in "an ongoing dispute," which predated the incident.[4] ECF Docket # 43, Plaintiff Exhibit ("Pl. Exh.") 3., Ostrowski Police Report at 1. White told Ostrowski that prior to the 911 call, she had gone upstairs to ask for hot water and "when [plaintiff] opened door [plaintiff] through [sic] hot water on her, and caused burn [sic] to (r) hand and (r) side on [sic] neck." Id.

---

[3] Aside from Ostrowski and Galli, plaintiff sets forth no admissible evidence to tie any other arresting officer's personal conduct to any wrongdoing arising from the August arrest. Accordingly, all claims for false arrest against defendant Officers Warren Savage and John Doe #1 - #7 are dismissed as a matter of law.

[4] Defendants are thus incorrect that the record is "completely devoid of any evidence that . . . Ostrowski himself was cognizant of the ongoing dispute between plaintiff and Ms. White." ECF Docket # 41, Defendants' Reply Memorandum in Further Support of their Motion for Summary Judgment ("Reply Mem.") at 4. Ostrowski's own contemporaneous written report directly belies such a claim.

Thereafter, plaintiff's daughter informed her that police were at her home. Upon walking into her dining room, plaintiff was placed under arrest. The arrest was effectuated by Ostrowski with the approval of his supervisor on site, Galli. Neither plaintiff nor any of her family members were interviewed by the officers despite plaintiff's confusion and protestations of innocence. Plaintiff first learned why she was being arrested while being placed in the police car when she was told "[White] was burned," though was not informed at that time that White was also the complaining witness. ECF Docket # 39, Defense Rule 56.1 Statement ("Def. R. 56.1") ¶ 10; ECF Docket # 42, Plaintiff Rule 56.1 Statement ("Pl. R. 56.1") ¶ 10. Plaintiff was taken to the 103rd precinct where she was fingerprinted, informed that White was the complaining witness, and told about White's accusations.

At some point thereafter, Ostrowski filed a sworn complaint, charging plaintiff with assault and harassment in the second degree. Def. Exh. F. at 1-2, Ostrowski Sworn Complaint. White also signed an affidavit attesting to the truth of Ostrowski's sworn complaint. Def. Exh. F. at 3, White Affidavit. Plaintiff was transferred to Queens County Central Booking where she arrived between approximately 2:00 and 3:00 a.m. the morning of August 24, 2006, and was arraigned at 8:30 p.m. that evening. In addition to setting bail, the Queens County Criminal Court issued a Temporary Order of Protection ("TRO"), which ordered plaintiff to stay away from White's person and residence and refrain from assaulting, menacing, threatening, intimidating, harassing, or otherwise committing a criminal offense against her.[5] The bail-posting office closed before plaintiff's husband had an opportunity to post bail following arraignment,

---

[5] The TRO was subsequently renewed on October 5, 2006 and again on November 21, 2006, and remained in effect until at least January 24, 2007. Def. R. 56.1 ¶ 14; ECF Docket # 38, Defense Exhibit ("Def. Exh.") G., Oct. 5, 2006 & Nov. 21, 2006 TROs.

and so plaintiff was transferred to Riker's Island where she arrived at approximately 2:00 a.m. the morning of August 25, 2006, and was released at approximately 5:00 p.m. that night.

These aforementioned facts are not in dispute. The primary points of contention center on whether White was actually injured, whether the August arresting officers observed any of White's claimed injuries, and whether the officers conducted any investigation prior to arrest beyond interviewing White. Defendants submit that at least Officer Ostrowski observed "visible injuries" on White; that EMS was contacted by White and responded to her complaints; and that Ostrowski interviewed EMS workers to corroborate White's claimed injuries. See Def. Mem. at 6; Def. R. 56.1 ¶ 7. Furthermore, defendants proffer that after the arrest, White told Ostrowski that she was later treated at a hospital for injuries consistent with her report. Def. R. 56.1 ¶ 8.

Plaintiff counters, however, that neither Ostrowski nor any other officers "personally observed" White's claimed injuries, but instead took White at her word, solely reporting and responding to what White stated. Pl. R. 56.1 ¶ 6. Neither one of Ostrowski's contemporaneous reports—his initial report or sworn complaint—indicates that he, or any other officer, actually observed White's injuries, or includes any notation of White's injuries beyond what White herself reported.[6] See Ostrowski Police Report at 1 ("C/V [(complaining victim)] *states* [that plaintiff's alleged conduct] . . . caused burn to (r) hand and (r) side on [sic] neck.") (emphasis added); Ostrowski Sworn Complaint at 1 ("Deponent is further *informed by the complainant* that the actions of the defendant caused her to sustain redness, peeling of the skin and substantial pain to the palm of her right hand and neck.") (emphasis added). No photos were taken of White's claimed injuries. See Ostrowski Dep. at 13. Moreover, although plaintiff concedes that she

---

[6] In his deposition, Ostrowski states affirmatively that he *did* personally observe White's injuries. See, e.g. Pl. Exh. 1, Ostrowski March 23, 2010 Deposition ("Ostrowski Dep.") at 6-7, 9, 12. His testimony on White's injuries, however, was a verbatim recitation of White's descriptions of her injuries reported in Ostrowski's sworn complaint immediately after refreshing his recollection with his sworn complaint.

"observed an ambulance one house from her own," plaintiff claims that EMS workers never actually responded to White, let alone were interviewed by any officer, and that in any case, White "refused ambulance medical treatment" "[d]espite the complaints of serious burning." Pl. R. 56.1 ¶ 7. Again, neither one of Ostrowski's contemporaneous reports indicates that he, or any other officer, conducted any interview with EMS either before or after arrest, or that EMS ever responded to the scene.[7] See Ostrowski Police and Sworn Reports. Ostrowski's initial police report further reveals that no "[c]anvass [was] [c]onducted," and that no "[e]vidence [was] [c]ollected." Ostrowski Police Report at 1, 3. Lastly, plaintiff denies, by implication, that White was ever treated at a local hospital. See Pl. R. 56.1 ¶ 8 ("White . . . tipped officer Ostrowski that she was seeking medical treatment at Queens County Hospital, *without specifying the time and/or dates of the treatment*.") (emphasis added). While Ostrowski's later sworn complaint indicates that White "informed" him "that she was treated at a local Queens hospital for the above mentioned injuries," there are no hospital records submitted by either party to prove or disprove whether White actually went to the hospital or received emergency treatment.[8]

### C. November 21, 2006 Arrest ("November arrest")

On November 21, 2006, White again contacted the NYPD, this time to report that plaintiff had allegedly thrown garbage through White's window. Officers Patrick Agugliaro ("Agugliaro") and Eric Ortega ("Ortega") (collectively the "November arresting officers")

---

[7] Ostrowski's deposition further corroborates this absence. While being questioned about the ways in which he corroborated White's report, Ostrowski initially assumed that he had "interview[ed] EMS before I put handcuffs on [plaintiff]." Ostrowski Dep. at 14. When Ostrowski then asked if he could review his "aided report" to refresh his recollection about who he spoke to from EMS and what information the conversation yielded, however, Corporation Counsel could find no EMS-related information or references in Ostrowki's report or field notes. Ostrowski Dep. at 14-16. Although Corporation Counsel noted for the record that further discovery would yield such information, Ostrowski Dep. at 16, no admissible evidence regarding EMS's presence the morning of August 24, 2006 is currently before the Court.

[8] Although Ostrowski stated during his deposition, "Mary Immaculate Hospital, burns to hands and face" while referencing some unspecified subpoenaed document, Ostrowski Dep. at 6, no such subpoena, record of that subpoena, or resulting document produced by subpoena is currently before the Court.

responded to the call, spoke with both White and plaintiff, and subsequently departed the scene without making any arrests. White then went to the 103rd police precinct and produced the TRO, which had been issued in August and renewed since. Later that night, the same two officers returned to speak with plaintiff and requested that plaintiff produce the TRO. After doing as requested, the officers arrested plaintiff for criminal contempt in the second degree and harassment in the second degree. Plaintiff was again brought to the 103rd Precinct, where she remained until 4 a.m. on November 22, 2006. Plaintiff was then brought to central booking and released on her own recognizance at 9:00 p.m. that night. Agugliaro filed a sworn complaint in the matter.

### D. Dismissal of Criminal Charges against Plaintiff

On December 18, 2006, the charges resulting from the August arrest were presented to the grand jury by Assistant District Attorney Harris Liolis ("ADA Liolis"). Ostrowski testified before the grand jury. The grand jury dismissed all charges against plaintiff relating to the August arrest. Plaintiff's charges stemming from the November arrest were adjourned in contemplation of dismissal pursuant to N.Y. C.P.L. § 170.55, and dismissed six months later.

## II. DISCUSSION

### A. Legal Standard

Summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "is warranted when, after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact." Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50, 255 (1986)). "It is the movants' burden to show that no genuine factual dispute exists . . . [and] where the movant 'fail[s] to fulfill its initial burden' of providing

admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented.'" Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)). If the movant does carry its burden, the party opposing summary judgment must set forth evidence demonstrating a genuine issue for trial, and may not rely only on allegations in its pleadings. Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006). "[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

### B. Federal Claims

*1. False Arrest under Section 1983 of the Civil Rights Act of 1871 ("Section 1983")*

#### a. General Standard

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted). Under New York law, the elements of false arrest are: "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) *the confinement was not otherwise privileged.*'" Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (quoting Broughton v. State, 37 N.Y.2d 451, 456 (N.Y. 1975)) (emphasis added). Probable cause "is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Weyant, 101 F.3d at 852 (internal quotations and citations omitted). The only element contested in the instant action is whether the August and November arresting officers

had probable cause and thus were "privileged to make an arrest." Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003).

### b. August Arrest

#### i. A Reasonable Juror Could Conclude that the August Arresting Officers Lacked Probable Cause to Arrest Plaintiff

Plaintiff brings a claim for false arrest under Section 1983 against the August arresting officers, Ostrowski and Galli, The City of New York, and Commissioner Kelly. Genuine issues of material fact exist concerning events precipitating the arrest of plaintiff, which, when construed in the light most favorable to plaintiff, would have given any reasonable officer serious cause to "doubt[] . . . the victim's veracity." Singer, 63 F.3d at 119. Taken together, these facts foreclose the possibility of judgment as a matter of law.[9]

"An officer has probable cause to arrest when in possession of facts sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense." Ricciuti v. New York City Trans. Auth., 124 F.3d 123, 128 (2d Cir. 1997). In evaluating probable cause, the Court looks to the totality of the circumstances and, mindful that hindsight is always twenty-twenty, only "consider[s] the facts available to the officer at the time of the arrest." Id. Thus "[p]robable cause may . . . exist where the officer has relied on mistaken information, *so long as it was reasonable* for him to rely on it." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (emphasis added). "However, the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." Id. (internal quotations omitted); see also Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) ("[A]n officer may not disregard plainly exculpatory evidence."). Although

---

[9] To the extent that plaintiff's complaint targets the August arresting officers in their official capacities, these claims are merely duplicative of the claims against the City of New York, the "real party in interest," Kentucky v. Graham, 473 U.S. 159, 166 (1985), and are, therefore, dismissed. For a discussion of the municipal and supervisory liability of the City of New York and Commissioner Kelly arising from the August arrest, see infra Part II.B.1.b.ii.

information furnished to police by a person who claims to be a victim of a crime generally "suffices to establish probable cause," Oliveira v. Mayer, 23 F.3d 642, 647 (2d Cir. 1994), this presumption of victim reliability only survives in the "absen[ce] [of] circumstances that raise doubts as to the victim's veracity," Singer, 63 F.3d at 119.

Prior to arrest, at least Officer Ostrowski was aware of the contentious relationship that existed between White and plaintiff. Prior relationships, such as this, which "give[] rise to a motive for a false accusation" are "[t]he most common situation in which . . . doubts arise" as to the veracity of the complaining witness.[10] Mistretta v. Prokesch, 5 F.Supp.2d 128, 133 (E.D.N.Y. 1998) (Gleeson, J.); see also Drummond v. Castro, 522 F.Supp.2d 667, 675 (S.D.N.Y. 2007) (McKeena, J.) ("Police do not cite *any evidence of a prior relationship* between the witness and Plaintiff that would *tend to suggest a hidden motive* on the part of the witness or cast doubt on the witness's veracity.") (emphasis added). Thus, although ordinarily, an arresting officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," Ricciuti, 124 F.3d at 128, where, as here, a bitter prior relationship exists "and *is known to the arresting officer before the arrest is made*, the complaint alone may not constitute probable cause; the officer may need to investigate further." Mistretta, 5 F.Supp.2d at 133 (emphasis added).

The August Arresting Officers should have investigated further but did not. Counter to what defendants argue, Ostrowski and Galli were "not absolutely privileged to arrest upon a charge by any private individual who claims to be a victim," especially White, an individual that at least Ostrowski should have known may very well have had an "axe[] to grind" with plaintiff. Id. The officers did not canvass the area, interview plaintiff or her family, or collect any

---

[10] Defendants' contention that knowledge of "the ongoing dispute between plaintiff and Ms. White . . . has absolutely no bearing on a probable cause determination made at the time of the arrest," is, therefore, groundless. Reply Mem. at 4.

evidence. It remains in dispute whether any EMS ever arrived on the scene, let alone were interviewed by the officers to corroborate White's account.

Moreover, genuine issues of material fact exist as to whether the August arresting officers actually observed any injuries consistent with White's claim that plaintiff scalded her with hot water. This is troubling. In factually similar 'he-said-she-said' assault matters, the Second Circuit routinely relies, in significant part, on the undisputed fact that prior to arrest, officers observed injuries consistent with a victim's complaint. See, e.g., Jocks, 316 F.3d at 137 (affirming district court's grant of judgment as a matter of law where officer "had before him . . . the statement of a *fellow police officer* that he had been assaulted and [police officer's] *obvious injuries*.") (emphasis added); Curley v. Vill. of Suffern, 268 F.3d 65, 69-70 (2d Cir. 2001) (affirming grant of summary judgment where, during interview with plaintiff, apparent victim of barroom brawl came up with *"blood on his lip,"* identified plaintiff as the one who hit him, and plaintiff admitted that he struck one of the victims) (emphasis added); Ricciuti, 124 F.3d at 128 ("[Officer was] approached by a *visibly injured* [victim], who produced a corrections officer badge, stated that he had been attacked without provocation, and identified [plaintiff] as his assailant. . . . [Plaintiff] did not deny causing [victim's] injuries.") (emphasis added).

Here, however, defendants have not offered sufficient admissible evidence to refute the possibility that none of the arresting officers personally observed White's injuries, if she even had any to begin with. As already discussed at length, supra Part I.B., Ostrowski's contemporaneous reports indicate only that White *reported* her injuries to him, not that he personally *observed* them, and his reports lack any indication that he, or any other officer, interviewed EMS prior to or after arrest. White's subsequent visit to the hospital and filing of the sworn affidavit is immaterial to the issue of probable cause to arrest. Even assuming White did

visit the hospital, a fact that is in dispute, these events occurred subsequent to arrest and thus have no bearing on the probable cause analysis, which looks to facts known to an officer *at the time of arrest*. See, e.g., Daniels v. City of New York, No. 03 Civ. 0809(GEL), 2003 WL 22510379, at *3 n. 4 (S.D.N.Y. Nov. 5, 2003) (Lynch, J.) ("The fact that [the victim] swore out a complaint against plaintiff on the following day is irrelevant to the probable cause analysis. It cannot support a finding of probable cause, because it occurred after the arrest."). Given the known prior contentious relationship between White and plaintiff combined with the seriousness of the alleged assault, the lack of any observable injuries, if proven, could lead a reasonable juror to conclude that the officers lacked probable cause to arrest plaintiff.

Where, as here, genuine issues of material fact exist on the issue of whether there was probable cause to arrest, the question is "properly presented to the jury," and the Court will not usurp their fact finding role. Moore v. Comesanas, 32 F.3d 670, 673 (2d Cir. 1994). The Court declines to afford the August arresting officers the shield of qualified immunity for substantially the same reason: The qualified immunity analysis is inextricably linked to the scope of the officers' pre-arrest investigation, whether the officers actually observed any injuries consistent with White's complaint, or conducted any interviews with EMS prior to arrest, all genuine and material factual disputes, which are strictly the province of the jury to resolve. See McClellan v. Smith, 439 F.3d 137, 147-49 (2d Cir. 2006) (vacating grant of qualified immunity where "District Court generally failed to heed the rule that resolution of genuine factual issues is inappropriate on motions for summary judgment based on qualified immunity.").

For the foregoing reasons, defendants' motion for summary judgment is denied as to the August arresting officers for plaintiff's false arrest claim arising out of the August arrest.

ii. Liability of the City of New York and Commissioner Kelly

Although plaintiff's false arrest claim under Section 1983 survives as to Ostrowski and Galli, summary judgment is granted to the extent plaintiff attributes her August false arrest to the City of New York or Commissioner Kelly. First, municipal liability cannot be predicated only upon the isolated unconstitutional acts of individual officers. See City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988) ("If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability."). Second, to the extent that plaintiff's claim against the City is premised upon the City's alleged failure to adequately train the August arresting officers, "[t]he mere fact that [plaintiff] was falsely arrested, without more, does not show that the City's training program is inadequate. A training program is not inadequate merely because a few of its graduates deviate from what they were taught." Jenkins v. City of New York, 478 F.3d 76, 95 (2d Cir. 2007). As to Commissioner Kelly, plaintiff has not set forth any evidence, admissible or not, to show personal involvement, a necessary element to any claim under Section 1983. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010). Likewise, plaintiff has not set forth admissible evidence to hold Kelly accountable in his supervisory capacity. See Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (setting forth potential categories of supervisory liability under Section 1983).

Summary judgment is, therefore, granted as to the City of New York and Commissioner Kelly for the August claim of false arrest.

c. November Arrest

Plaintiff additionally brings a claim for false arrest under Section 1983 against the November arresting officers, Agugliaro and Ortega, the City of New York, and Commissioner

Kelly. Plaintiff argues that the November arresting officers improperly and unconstitutionally relied solely upon the existence of a TRO without probable cause to believe that plaintiff had violated the TRO before effectuating the arrest. See Opp. Mem. at 10-14. For the reasons set forth below, however, this claim fails because even under the plaintiff's version of events, the officers *did* have probable cause to arrest plaintiff for contempt in the second degree for violating a valid TRO. See Drummond, 522 F.Supp.2d at 673 ("[E]ven where factual disputes exist, a § 1983 claim may fail if the plaintiff's version of events establishes the existence of probable cause to arrest.").

The bases for this conclusion are straightforward. In New York, "the crime of criminal contempt in the second degree requires that (1) a valid protective order existed, (2) the defendant knew about that order, and (3) the defendant intended to violate the order." Carthew v. Cnty of Suffolk, 709 F.Supp.2d 188, 198 (E.D.N.Y. 2010) (Bianco, J.) (citing N.Y. Penal L. § 215.50(3)). In this case, there is no dispute that a valid TRO existed at the time of arrest, which ordered plaintiff to "[s]tay away [White] and/or from the . . . home of [White]." See Nov. 21, 2006 TRO. There is likewise no dispute that plaintiff knew of the TRO—after all, she produced it for the arresting officers—and, therefore, was at least on constructive notice that her presence in the same building as White was technically in violation of the stay-away order. It was not the November arresting officers' duty to second guess or question the wisdom of the original issuance and numerous extensions of the TRO by the Queens County Criminal Court. The officers' job was to assess whether probable cause existed to effectuate an arrest, based on the information the officers knew at the time.[11] The November arresting officers did just this. Even

---

[11] Likewise, plaintiff's argument that the officers should have been aware of White's prior arrests, false reports, and attempts to use the TRO as sword rather than a shield falls flat. See Carson v. Lewis, 35 F.Supp.2d 250, 261 (E.D.N.Y. 1999) (Seybert, J.) ("[I]t does not follow that the sum of information known to all fellow officers is necessarily imputed to the arresting officer at the time of the arrest. To impose such an onerous burden on every

under plaintiff's version of events, the officers acted with caution, initially declining to arrest the plaintiff for lack of probable cause based solely on White's complaints. The officers arrested plaintiff only after White first produced a copy of the TRO, containing orders for plaintiff to stay away from White, and then plaintiff reproduced a copy at her home. The defendant officers did not arrest plaintiff based solely on the *existence* of the TRO, as plaintiff urges, but rather based on plaintiff's *violation* of the TRO for not staying away from White as required.

Because no constitutional violation resulted from the November arrest, the court need not reach the issue of qualified immunity. Singer, 63 F.3d at 118. ("[Where] there [i]s probable cause for the arrest, [that] conclusion . . . subsumes the issue of immunity."). For the same reason, the Court dismisses all claims against The City of New York and Commissioner Kelly. See Farid, 593 F.3d at 249 (declining to reach the issue of supervisory liability under Section 1983 where no underlying constitutional violation was shown).

For the foregoing reasons, summary judgment is granted as to all defendants for the November claim of false arrest.

### 2. Malicious Prosecution under Section 1983

#### a. General Standard

Plaintiff brings claims for malicious prosecution pursuant to Section 1983 against all named defendants stemming from both the August and November arrests. The elements of a malicious prosecution claim brought under Section 1983 parallel those under state law. "[U]nder New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause

---

officer charged in a civil suit would effectively convert a Section 1983 cause of action into a fishing expedition"). In any event, "knowledge of a victim witness's criminal or psychiatric history, alone, is not enough to destroy probable cause or strip officers of qualified immunity on the basis of arguable probable cause." Escalera v. Lunn, 361 F.3d 737, 746 (2d Cir. 2004).

for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello, 612 F.3d at 161 (internal quotations and citations omitted). "[T]o prevail on a § 1983 claim against a state actor for malicious prosecution," however, "a plaintiff must [also] show a violation of his rights under the Fourth Amendment," Id. at 160-61, which requires "that [a] seizure resulted from the initiation or pendency of judicial proceedings." Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997).

> b. Preliminary Matters: Groundless Claims, Improper Parties, and Prosecutorial Immunity

As an initial matter, the Court can easily dispense with several groundless claims and improper parties.

First, "under New York law, an adjournment in contemplation of dismissal . . . is not a favorable termination . . . ." Fulton v. Robinson, 289 F.3d 188, 196 (2d Cir. 2002) (internal quotations and citations omitted). Accordingly, summary judgment is granted as to all claims for malicious prosecution arising from the November arrest against all defendants.

Second, with regard to plaintiff's malicious prosecution claims arising from the August arrest, summary judgment is granted as to Galli—as opposed to Ostrowski, who did more than just arrest plaintiff—because an arrest alone "cannot serve as the predicate deprivation of liberty" required under the Fourth Amendment for Section 1983 malicious prosecution claims as "it occurred prior to [plaintiff's] arraignment and without a warrant, and therefore was not pursuant to legal process." Singer, 63 F.3d at 117 (internal quotations omitted). For the same reasons described, supra Part II.B.1.b.iii, neither the City of New York nor Commissioner Kelly may be held liable for the isolated discretionary actions of a lone officer—Ostrowski—and thus summary judgment is granted as to any municipal and supervisory malicious prosecution claims. Summary judgment is also granted as to named defendants, Sergeants Joseph Langan and

O'Brien, whose only liability for malicious prosecution is premised on the bare allegation in plaintiff's complaint, insufficient to survive summary judgment, that these defendants "approved and encouraged the filing of the complaint report relating to the August 24, 2006 false arrest." Compl. ¶ 47.

Third, summary judgment is granted as to ADA Liolis and DA Brown, in both their individual and official capacities for their alleged role in prosecuting the charges resulting from the August arrest.[12] "To the extent [plaintiff] seeks damages from [the District Attorney and Assistant District Attorneys] in their official capacities, the Eleventh Amendment bars [her] claims." Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997). To the extent plaintiff sues Liolis and Brown in their individual capacities, "the immunity that the law grants prosecutors is absolute." Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009) (internal quotations omitted). All of plaintiff's claims of wrongdoing on the part of ADA Liolis, and by extension DA Brown in his supervisory capacity, pertains to "acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial," which necessarily "include[s] the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). These acts "are entitled to the protections of absolute immunity." Id.

Accordingly, the sole remaining claim for malicious prosecution is against Officer Ostrowski in his individual capacity, relating to his role in the prosecution of the charges arising from the August arrest of plaintiff.

---

[12] As plaintiff concedes in her Memorandum in Opposition to Summary Judgment, ECF Document # 43, ("Opp. Mem.") at 24, the Office of the Queens District Attorney is a non-suable New York City agency. See N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.").

c. Malicious Prosecution Claim against Ostrowski Survives Summary Judgment

### i. Fourth Amendment Seizure

As an initial matter, plaintiff's detention at Riker's Island following her arraignment was more than an adequate "deprivation of liberty . . . pursuant to legal process" for Fourth Amendment purposes. Singer, 63 F.3d at 117 (internal quotations omitted).

### ii. Initiation of Prosecution

Turning to the elements of the state law tort of malicious prosecution, first, a reasonable juror could find that Officer Ostrowski "initiat[ed] or continu[ed] . . . a criminal proceeding against plaintiff." Manganiello, 612 F.3d at 161. Ostrowski's signing of the sworn criminal complaint alone is sufficient to satisfy this element. Rounseville v. Zahl, 13 F.3d 625, 628 (2d Cir. 1994) ("[D]efendants swore out an accusatory instrument, which would appear under New York law to satisfy the requirement that the defendants initiated a criminal proceeding against [plaintiffs]."); Ricciuti, 124 F.3d at 130 ("[N]o one disputes that [the officer] started the assault prosecution by filing the charges of second-degree assault."). While it is true that "the chain of causation," between the actions of an officer and the claim of malicious prosecution "is broken by the intervening exercise of independent judgment," Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999), this 'break' does not occur until after plaintiff has been *formally charged*—in this case until after the grand jury would have returned an indictment. See Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994) ("Once the grand jury indicted [plaintiff], control of the prosecution passed to the prosecutor and was no longer within the agent's authority."). Ostrowski not only filed the initial charge, but also testified before the grand jury

"based in part on documents he brought for the purpose of having the plaintiff indicted." Compl. ¶ 54.

### iii. Favorable Termination

Second, the grand jury's dismissal of the charges arising from plaintiff's August arrest was a favorable termination. See Phillips v. DeAngelis, 571 F.Supp.2d 347, 356 (N.D.N.Y. 2008) ("The return of No True Bill by a grand jury is a termination in the plaintiff's favor.").

### iv. Probable Cause to Initiate

Third, although a closer call, genuine issues of material fact exist as to whether Officer Ostrowski had probable cause to sign the sworn complaint and testify before the grand jury. In short, the "sparse factual record . . . when viewed most favorably to the [plaintiff], does not eliminate the possibility that the defendant[] initiated the criminal proceeding without probable cause." Rounseville, 13 F.3d at 630.

The determination of probable cause to *prosecute* is distinct from probable cause to *arrest*, see Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003), and "is assessed in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of the arrest." Carson v. Lewis, 35 F.Supp.2d 250, 263 (E.D.N.Y. 1999) (Seybert, J.). The Court must, therefore, assess the existence of probable cause in light of Ostrowski's knowledge at the time he filed the sworn complaint and then later testified before the grand jury. While the Court's determination that genuine issues of material fact exist regarding probable cause to *arrest* may not be dispositive of probable cause to *prosecute*, these disputed facts are still highly relevant to the disposition of plaintiff's malicious prosecution claim.

Prior to filing the sworn complaint soon after arrest, Ostrowski was in possession of at least two additional facts not known to him when he arrested plaintiff: (1) that White would be

filing her own sworn affidavit affirming that the facts contained in Ostrowski's complaint were true and (2) that White had informed Ostrowski that she "was treated at a local queens county hospital for [her] . . . injuries." ECF Docket # 38, Exh. 7 at 1. In addition, by the time Ostrowski testified before the grand jury, a valid TRO was in force against plaintiff. Nevertheless, if a juror were to conclude that Ostrowski had not in fact observed any visible injuries and/or had not spoken with any one from EMS prior to the August arrest, a juror could also reasonably conclude that these new, post-arrest facts known to Ostrowski were insufficient to make out probable cause to prosecute. This is especially true in the absence of evidence that Ostrowksi conducted further inquiry, for example, to confirm that White had actually visited the hospital or to request hospital records to corroborate White's claimed injuries. See Colon v. City of New York, 60 N.Y.2d 78, 82 (N.Y. 1983) (holding that in analyzing a claim for malicious prosecution, "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause."); cf. Reynolds v. City of New York, No. 04 Civ. 6540(SHS), 2005 WL 2861601, at *4 (S.D.N.Y. Oct. 31, 2005) (Stein, J.) (granting summary judgment where plaintiffs failed to "adduce[] any evidence that facts had come into [the officers'] knowledge that would cause them to believe that the charges against the [plaintiffs'] were groundless" and "hospital records listed injuries consistent with [victim]'s account of assault . . . .") (internal quotations omitted).

v. Actual Malice

Lastly, lack of probable cause to initiate a prosecution is evidence of "actual malice." Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) ("In most cases, the lack of probable cause—while not dispositive—'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'") (quoting

Conkey v. State, 427 N.Y.S.2d 330, 332 (N.Y. App. Div. 1980)). Where, as here, the Court "find[s] an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well." Boyd, 336 F.3d at 78; see also Rounseville, 13 F.3d at 631 ("[The] conclusion that the lack of probable cause presents a jury question likewise suggests that the existence of malice cannot be resolved through summary judgment."). Moreover, where there is a genuine issue of material fact as to whether probable cause was "so totally lacking as to reasonably permit an inference that the proceeding was maliciously instituted," Martin v. City of Albany, 42 N.Y.2d 13, 17 (N.Y. 1977), the Court cannot grant a defendant qualified immunity.

Defendants' motion for summary judgment as to Officer Ostrowski on plaintiff's malicious prosecution claim is, therefore, denied.

### 3. Conspiracy Under Section 1985 of the Civil Rights Act of 1871 ("Section 1985")

Plaintiff brings a Section 1985 claim, alleging that all of the defendants "conspired" to deprive her of her constitutional rights. Such a conspiracy, however, "must . . . be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007). Plaintiff's Section 1985 claim can, and must be, dismissed on the sole ground that plaintiff has set forth no proof—beyond stating, in conclusory fashion, that plaintiff is a "member[] of the South Asian community" and part of "the class of individuals who are subject to [TRO]s." Compl. ¶ 78-79—to suggest that any alleged actions by any defendants alone or in tandem were the product of "discriminatory animus." Summary judgment, therefore, is granted as to plaintiff's Section 1985 claim against all defendants.

## C. State Law Claims

### 1. Pendent Jurisdiction

Because two of plaintiff's federal law claims survive and plaintiff's state law claims "are so related to claims in the action within [the Court's federal question] jurisdiction that they form part of the same case or controversy under Article III," the Court retains supplemental jurisdiction over plaintiff's state law claims for false arrest, malicious prosecution, battery, and intentional infliction of emotional distress. 28 U.S.C. § 1367(a).

### 2. Pendant State Law False Arrest and Malicious Prosecution Claims

As previously stated, the federal elements of false arrest and malicious prosecution are substantially the same as their New York state law counterparts. Likewise, where "the record plainly reveals the existence of genuine issues of material fact relating to the qualified immunity defense [for plaintiff's federal law claims,] . . . New York courts are no different in this regard." Jones v. Parmley, 465 F.3d 46, 64 (2d Cir. 2006). Accordingly, for the same reasons discussed, supra Part II.B.1. & 2., summary judgment as to plaintiff's state law false arrest and malicious prosecution claims is granted in part, and denied in part as to Ostrowski and Galli consistent with the Court's ruling on the federal claims, with one exception: municipal liability survives under plaintiff's state law claims.

Unlike claims brought pursuant to Section 1983, under New York state law, municipalities may be held vicariously liable for false arrest and malicious prosecution under a theory of respondeat superior. Williams v. City of White Plains, 718 F.Supp.2d 374, 381 (S.D.N.Y. 2010) (Young, J.). This applies even to discretionary actions by police officers where, as here, genuine issues of material fact exist as to whether there was probable cause for arrest. Lubecki v. City of New York, 758 N.Y.S.2d 610, 617 (N.Y. App. Div. 2003). Accordingly,

summary judgment is denied with respect to plaintiff's state law false arrest and malicious prosecution claims against defendant City of New York.[13]

### 3. Pendant State Law Battery Claim

Plaintiff claims that the August and November arresting officers' touching of plaintiff in order to effectuate arrest constituted battery. To establish the tort of battery under New York law, plaintiff must show, inter alia, "intentional wrongful physical contact with another person without consent." Girden v. Sandals Intern., 262 F.3d 195, 203 (2d Cir. 2001). "If an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest." Ladoucier v. City of New York, No. 10 Civ. 05089(RJH), 2011 WL 2206735, at *6 (S.D.N.Y. June 6, 2011) (Holwell, J.); see also Remley v. State, 665 N.Y.S.2d 1005, 1008 (N.Y. Ct. Cl. 1997) ("The acts involved in effecting an unlawful arrest may satisfy the elements of a claim for assault and battery."). Because, for reasons already described, there is a genuine issue of material fact as to whether the August arresting officers effectuated an unlawful arrest—i.e. arrested plaintiff without probable cause—summary judgment on plaintiff's battery claim is denied as to Ostrowski and Galli in their individual capacities. On the other hand, because the Court has determined as a matter of law that probable cause existed for the November arrest, and because there is no admissible evidence—as opposed to mere allegations, see Opp. Mem. at 27—to suggest that the November arresting officers used unreasonable or excessive force, summary judgment on plaintiff's battery claim is granted as to the November arresting officers in their individual capacities. For the same reasons just described in the context of plaintiff's state

---

[13] To the extent plaintiff brings a similar vicarious liability claim against Commissioner Kelly in his official capacity, such a claim is merely duplicative of plaintiff's claims against the city. Graham, 473 U.S. at 166. Moreover, because Commissioner Kelly is "subordinate to the City under the chain of respondeat superior, [he] ha[s] no individual responsibility fastened on [hi]m in the circumstances." Marshon v. City of New York, 451 N.Y.S.2d 106, 107 (N.Y. App. Div. 1982).

law false arrest and malicious prosecution claims, summary judgment is denied with respect to the state law claim for battery against the City of New York on a theory of <u>respondeat superior</u> liability for the actions of Ostrowski and Galli in effectuating the August arrest.[14]

### 4. Pendant State Law Intentional Infliction of Emotional Distress Claim

Plaintiff's state law claim for intentional infliction of emotional distress must be dismissed with respect to all of the defendants for two primary reasons. First, there is no genuine issue of material fact as to whether any of the defendants' conduct was sufficiently "extreme and outrageous." <u>Bender v. City of New York</u>, 78 F.3d 787, 790 (2d Cir. 1996). While the allegations against defendant White may in fact meet this rigorous standard, none of the city defendants' actions do, no matter how flawed they may be proven to be. Second, "under New York law, [n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." <u>Munoz v. City of New York</u>, No. 04 Civ. 1105(JGK), 2008 WL 464236, at *8 (S.D.N.Y. Feb. 20, 2008) (Koeltl, J.) (internal quotations omitted) (alteration in original). Here, plaintiff's claim for intentional infliction of emotional distress is subsumed by her state law tort claims for false arrest, malicious prosecution, and battery, all resting on the same set of facts.

Accordingly, summary judgment is granted as to all defendants on plaintiff's claim for intentional infliction of emotional distress.

### III. CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part.

---

[14] <u>See</u> discussion, <u>supra</u> note 13, concerning Commissioner Kelly's liability.

With regard to the federal law claims, summary judgment is denied as to plaintiff's actions for (1) false arrest against Officer Ostrowski and Lieutenant Galli in their individual capacities and (2) malicious prosecution against Officer Ostrowski in his individual capacity. Summary judgment is granted with regard to all of plaintiff's federal law claims against the City of New York and all other named defendants, except for White, in their individual and official capacities.

With regard to the state law claims, summary judgment is denied as to plaintiff's actions for (1) false arrest against Officer Ostrowski and Lieutenant Galli in their individual capacities, (2) malicious prosecution against Officer Ostrowski in his individual capacity, and (3) battery against Officer Ostrowski and Lieutenant Galli in their individual capacities. Summary judgment is also denied with regard to the surviving state actions against the City of New York on a theory of respondeat superior liability. Summary judgment is granted with regard to all of plaintiff's state law claims against all other named defendants, except for White, in their individual and official capacities. Summary judgment is granted on plaintiff's claim for intentional infliction of emotional distress as to all defendants.

SO ORDERED.

Dated: Brooklyn, New York
       March 30, 2012

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge

25